**Sharon Rapp, Individually and as Administratrix of the Estate of Lorraine Rapp, Deceased, Plaintiff-Appellant, v. Mildred E. Hiemenz, Defendant-Appellee.**

Gen. No. 68–85.

Second District.

March 24, 1969.

Dreyer, Foote and Streit, of Aurora, for appellant.

Gates W. Clancy, of Geneva, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

The plaintiff brought this suit, individually and as Administratrix of the Estate of Lorraine Rapp, Deceased. Her complaint alleged that on May 23, 1964, the time of the injury, she was pregnant with a living, viable child, later named Lorraine Rapp; that the defendant, on that date, through negligence or wilful misconduct in driving her automobile, proximately caused permanent injuries to the plaintiff and to the unborn child, from which the child died.

The question of liability for the death of the unborn child was raised before the trial court by the defendant's motion for summary judgment, which the court granted. The balance of the plaintiff's complaint, relating to her own personal injuries, went to trial before a jury. The trial court, at the close of all the evidence, directed a verdict for the plaintiff on the question of liability. The jury returned a verdict in favor of the plaintiff in the sum of $500. The plaintiff appealed from both the summary judgment on the wrongful death claim and from the amount of damages assessed by the jury in her own personal injury action.

In the wrongful death action, the pleadings, affidavits and depositions before the court, indicated that on May 23, 1964, the date of the auto accident, the plaintiff was approximately four and one-half months pregnant; that she had felt movement of the fetus prior to this, and further, experienced "signs of life" and movement of the fetus thereafter, but that during the months of August,

384

September and October, these movements did not appear as often and finally ceased; and that on November 18, 1964, the said child was stillborn.

At the time of the accident, the plaintiff was thrown into the steering wheel and was bruised along the lower left portion of her abdomen, side, and back. She suffered stomach cramps and internal bleeding thereafter. The plaintiff's obstetrician saw her immediately after the accident and prescribed rest and observation. The doctor again saw her on June 1, at which time she complained of a dull, low backache and general discomfort, but no severe pain. The doctor stated that she next saw the plaintiff on June 30, and again on July 14; that in June the pregnancy looked to be about the size of a four-month gestation, but by July 14 the size had increased markedly, to about the equivalent of a seven- or eight-month gestation.

The doctor saw the plaintiff regularly thereafter. About the middle of October, at which time the doctor said the plaintiff was past due, she observed that the patient was too large and the fetus' head was not engaged. She ordered an x ray on October 27 because she did not hear any heart tones, and the x ray indicated a hydrocephalic child. The child, who was taken stillborn from the plaintiff on November 18, 1964, by a surgical type delivery which required a crushing of its head, also had a meningocele, which is not uncommon with hydrocephalics. The doctor indicated that as a result, she did not know what caused the condition. No autopsy was performed.

The doctor, when asked her opinion as to a causal connection between the injury to the plaintiff on May 23, which she had observed, and the subsequent stillborn birth, answered that she did not know the direct cause or causal relationship. She testified in her deposition ". . . what's the sequence of events here, I wouldn't

be able to say. There is a probability but not a — — there is a possibility but the probability is minor."

In Amann v. Faidy, 415 Ill 422, 114 NE2d 412 (1953), at page 432, the court, in overruling Allaire v. St. Luke's Hospital, 184 Ill 359, 56 NE 638 (1900), held that there could be a wrongful death action in behalf of a viable child, who suffered prenatal injuries and was thereafter born alive, but subsequently died as a result of those injuries. The court enumerated the various policy and precedent arguments both favoring and disfavoring the determination that a cause of action could exist for the wrongful death of a child who was negligently injured en ventre sa mere and who, after his birth, died as a result of those injuries.

The language of Amann sets forth two requirements. The first is that the child be born alive. The issue of whether a wrongful death action would lie if the child had not been born alive was not before the court; and the court—at pages 423 and 424, in defining the issue before it; at page 427, in referring to various legal articles urging a course of action in behalf of "a viable child, who survives birth"; and at page 432, in setting forth its holding—clearly limited its decision to a pronouncement that such an action would lie if the child were born alive and subsequently died as a result of prenatal injuries.

The second requirement in Amann—found in the statement and cases cited at page 426—is that the child be viable and capable of existing independently of the mother at the time the injuries are wrongfully inflicted. At page 431, the court defined a viable fetus as one sufficiently developed for extrauterine survival, normally a fetus of seven months or older.

Subsequently, the Appellate Court extended the holding in Amann. It held that there was no valid basis for distinguishing whether the injuries were inflicted upon the fetus at a time it was viable as opposed to nonviable;

that if the child were later born alive, it should have a cause of action. Daley v. Meier, 33 Ill App2d 218, 178 NE2d 691 (1961). Also see: Sana v. Brown, 35 Ill App2d 425, 426, 183 NE2d 187 (1962).

The factual situation in the case at bar is different from that in either Amann or Daley, supra. Here the injuries were inflicted at a time the fetus was nonviable, and the child was born dead. We are asked to determine whether a wrongful death action may exist in such a case. This subject is treated in an annotation found in 15 ALR3d 992, entitled "Death Action—Unborn Child."

In discussing whether or not a wrongful death action may be maintained for the death before birth of a child as a result of injuries sustained while in its mother's womb, the annotation refers to a number of decisions which suggest a rather general division of authority on the question.

In those jurisdictions which have held such an action is maintainable, the courts, with the exception of one Georgia case, have held a wrongful death action may be maintained for the death of an unborn child, *where there was a viable fetus.* Apparently, only Porter v. Lassiter, 91 Ga App 712, 87 SE2d 100 (1955), has permitted recovery for the death of an unborn child even though the child was not viable at the time.

While Daley holds that the right to a cause of action should not depend on whether the fetus was viable when injured, that case must be read in light of the fact that the child held there to be entitled to a cause of action, was born alive. In the instant case the child was stillborn. The occurrence giving rise to the injury, in the case at bar, took place when the fetus was not viable, and the facts before the court—such as the marked swelling in July and the lessening of the fetus movement from August on—strongly suggest that at no time was there a viable fetus capable of independent existence. We are not moved, under the circumstances, to attempt

387

to expand the holding in Amann. We are of the opinion that no wrongful death action should lie where the injury complained of took place when the fetus was not viable, and when the child was not born alive. Under the circumstances, we believe the trial court correctly granted the defendant's motion for summary judgment.

In the action for her own injuries, the plaintiff contends that two of the instructions and one of the verdict forms given to the jury were improper; that certain testimony was erroneously excluded; and that the removal of the issues of lost earnings and permanency of her injuries was improper.

■ The instructions complained of referred to the issue of proximate cause of the injuries. The trial court had clearly indicated, that in directing the issue on liability, it was doing so only on the issues of negligence and contributory negligence. Both the issues of proximate causation and damages were to remain for the determination of the jury. The approach may have been somewhat unique, but there was no misunderstanding by counsel or litigants with reference to what the court was doing. It was proper, and essential, under this approach, to instruct the jury relative to proximate cause as an issue in the case.

■ Because the issue of proximate cause of the injuries remained in the case, it was also proper to submit a verdict form which would have permitted the jury to have found for the defendant and against the plaintiff. Further, the fact that the jury did find for the plaintiff indicates that the plaintiff suffered no prejudice from the submission of this verdict form.

■ The trial court refused testimony relative to the permanency of the plaintiff's injuries and removed this issue from the consideration of the jury. A review of the evidence relative to the plaintiff's injury indicates that the trial court was correct in doing this, and, certainly, that the plaintiff was not prejudiced thereby.

■ Her testimony relative to her loss of earnings was speculative and vague. She testified that she had been employed on a commission basis as a door-to-door saleslady, but could offer nothing to corroborate her statement relative to earnings. She testified to loss of earnings for a given period of time—during a part of which she had been unable to work due to two pregnancies. It is highly doubtful that a verdict based, in part, upon such vague and speculative evidence of loss of earnings, would have been upheld.

■ We have considered the trial rulings of which the plaintiff has complained, have examined all of the evidence, and are satisfied that a just conclusion has been reached. We find that no error occurred at the trial which was prejudicial to the plaintiff's rights. Under the circumstances of this case, the judgment, in excess of five times the special damages, appears adequate and, therefore, should be affirmed. Ziegler v. Smith, 86 Ill App2d 215, 224, 229 NE2d 340 (1967).

Judgment affirmed.

ABRAHAMSON, P. J. and SEIDENFELD, J., concur.