ARTHUR C. LECCESE, administrator and individually, & another *vs.* JAMES F. McDONOUGH & another.

Middlesex.   December 8, 1971. — February 7, 1972.

Present: TAURO, C.J., CUTTER, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Infant. Actionable Tort. Death. Words,* "Person."

A tort action under G. L. c. 229, § 2, as amended, for negligence in giving prenatal care to a viable foetus could not be maintained where the foetus was later stillborn. [65–68]

TORT.   Writ in the Superior Court dated November 4, 1970.

The action was heard by *Tomasello, J.,* on demurrers.

*George R. Halsey* (*Robert I. Deutsch* with him) for the plaintiffs.

*David W. Kelley* for the defendants.

CUTTER, J. A Superior Court judge sustained the demurrer of each of the defendants, two doctors, in an action of tort for negligence in giving prenatal care to the plaintiff administrator's intestate (the Leccese foetus). The declaration alleges that in October, 1969, the Leccese foetus "was a viable child in the womb" and that, "in consequence of" each defendant's negligence in treating it over seven months, it "suffered great pain of body and mind, and subsequently died." The action is "for the benefit and use of the next of kin" under G. L. c. 229 (see fn. 1). The plaintiffs admit "for purposes of this appeal that . . . [the Leccese foetus] died in her mother's womb and was thereafter delivered stillborn from her mother." We treat the matter as if the declaration appropriately alleged this fact.

The controlling statute is G. L. c. 229, § 2 (as amended through St. 1967, c. 666, § 1).[1] With respect to prenatal injuries, recovery for wrongful death under the predecessor of c. 229 was originally denied in an opinion by Mr. Justice Holmes in *Dietrich* v. *Northampton*, 138 Mass. 14. In that case there was some slight evidence that the foetus (about four to five months advanced in

---

[1] Chapter 229, § 2, as amended, reads in part (emphasis supplied): "A person who (1) by his negligence causes the death of a *person* in the exercise of due care, or (2) by wilful, wanton or reckless act causes the death of a person under such circumstances that the deceased could have recovered damages for personal injuries if his death had not resulted . . . shall be liable in damages in the sum of not less than five thousand nor more than fifty thousand dollars, to be assessed with reference to the degree of his culpability and distributed as provided in section one; except that . . . [exceptions not relevant]. . . . Damages under this section shall be recovered in an action of tort by the . . . administrator of the deceased. No recovery shall be had under this section for a death which does not occur within two years after the injury which caused the death. An action to recover damages under this section shall be commenced within two years from the date of death or within such time thereafter as is provided by" c. 260, §§ 4, 4B, 9, or 10. General Laws c. 229, § 1, as amended through St. 1961, c. 166, prescribes the manner of distribution of any damages recovered among the decedent's spouse, issue, and next of kin.

pregnancy) did live for ten or fifteen minutes. The court (p. 17) decided, after reviewing the then existing authorities, "that, as the unborn child was a part of the mother at the time of the injury, any damage to it which was not too remote to be recovered for at all was recoverable by her." The opinion proceeded, "we think it clear that the statute sued upon does not embrace the . . . intestate within its meaning." This rule, in effect, was reaffirmed in *Bliss* v. *Passanesi*, 326 Mass. 461, and in *Cavanaugh* v. *First Natl. Stores, Inc.* 329 Mass. 179.

In *Keyes* v. *Construction Serv. Inc.* 340 Mass. 633, 634-637, we took note of, and reviewed, the constantly developing trend of the decisions elsewhere to depart from the doctrine of the *Dietrich* case, 138 Mass. 14. We also discussed conflicting considerations which bore upon whether recovery should be allowed. We summarized our conclusions in the *Keyes* case, at p. 637: "The . . . declaration alleges receipt of a bodily injury by . . . [the] intestate when a viable child in his mother's womb. We interpret the term viable child to mean a foetus so far formed and developed that if then born it would be capable of living. The declaration does not allege with sufficient certainty the fact, if true, that the child was born alive. *If the child was stillborn the plaintiff would have no right of action.* We think that the plaintiff should have an opportunity to amend her declaration. If she does so and states a cause of action in accordance with this opinion, the case is to stand for further proceedings, otherwise the order sustaining the demurrer is affirmed" (emphasis supplied).

In *Torigian* v. *Watertown News Co. Inc.* 352 Mass. 446, we considered an accident which occurred on January 2, 1964, when the mother had been pregnant (p. 447) for three and one-half months. The foetus "was not then viable." On March 13, 1964, the child was born and lived about two and one-half hours. In these circumstances, we held that the child "was a 'person' within the meaning of G. L. c. 229, § 2, as amended."

A 1969 case applying Massachusetts law, *Henry* v. *Jones*, 306 F. Supp. 726, 727 (D. Mass.), correctly con-

cluded that the Massachusetts "courts would hold that the distinction between infants born alive and those stillborn is of such significance that recovery under" c. 229, § 2, as amended "will be denied to the latter." Special reliance was placed on our decisions in the *Keyes* case, 340 Mass. 633, 636, 637, and the *Torigian* case, 352 Mass. 446, 447–448.[2]

The requirement that the foetus be born alive, stated expressly in the *Keyes* case, 340 Mass. 633, 636, lays down a sensible and easily administered rule under our statute. In recognizing the possibility of recovery under c. 229, § 2 (as amended), for a viable foetus born alive in the *Keyes* case, and for a foetus nonviable at the date of injury but later born alive (see the *Torigian case,* 352 Mass. 446), we went as far in revising the rule in the *Dietrich* case, 138 Mass. 14, as the statutory language reasonably permits. If a foetus is born alive, it becomes a "person" with at least the theoretical possibility of survival and of enduring the consequences of prenatal injury throughout its life. A foetus not born alive seems to us to incur no such risk of continuing injury and also not to be a "person" within our interpretation of the legislative intention.[3] If there are to be changes in the bases for recovery in this type of statutory action, we think that they are for legislative rather than judicial determination.

The plaintiff invites our attention to authorities elsewhere. These authorities are somewhat split. Many of them rest upon the interpretation of particular wrongful death statutes, some unlike our own in various respects.

---

[2] The judge in holding "that a stillborn child is not a 'person' under . . . c. 229, § 2," pointed out (p. 727) that the Massachusetts requirement (that "recovery for prenatal injuries . . . be conditioned on live birth") conforms with the law of property. See Tiffany, Real Property (3d ed.), § 1127.

[3] The distinction applied by us reduces to a minimum the risks of recovery based on speculation or conjecture and of encouraging fictitious claims. Such risks may be especially significant where the alleged prenatal injury and the subsequent miscarriage occur early in pregnancy. The distinction appears to be recognized in the legislative differentiation between death after a live birth (death certificate required) in G. L. c. 46, § 9 (as amended through St. 1969, c. 106), and foetal death in § 9A (inserted by St. 1960, c. 48, § 4).

The principal decisions are collected in a reporter's note to Restatement 2d: Torts, § 869 [4] (Tent. Draft No. 16, April 24, 1970, pp. 174–182). See Harper & James, Torts, § 18.3, p. 1031; Prosser, Torts (4th ed.) § 55, pp. 337–338. See also annotation, 15 A. L. R. 3d 992. We adhere to the view taken in the Massachusetts decisions already mentioned.

*Orders sustaining demurrers affirmed.*

---

[4] Section 869 reads (emphasis supplied) : "(1) One who tortiously causes harm to an unborn child is subject to liability to the child for such harm *if it is born alive.* (2) *If the child is not born alive,* there is no liability unless the applicable wrongful death statute so provides." At p. 176 of Tentative Draft No. 16, Professor Prosser, the reporter, and his advisers favored the position "that there can be no cause of action until the child is born alive. Until then it is a part of the mother. If the injury causes the stillbirth, she should have damages of her own. If it does not, no one should recover. There is too much danger of duplication of the mother's damages in such a case." They recognized (at pp. 175–176) that the question appeared "to come down to the construction of the language of the wrongful death act in the particular state — is the child the sort of 'person' intended to be included?" Section 869 was approved in the form appearing in Tentative Draft No. 16. See Proc. Am. Law Inst. 1970, pp. 371–375.