TOTH v GOREE

Opinion of the Court

1. Death—Wrongful Death Action—Personal Representative—
   Parties—Statutes.

   The cause of action created by the wrongful death act is a
   derivative one whereby the personal representative of the
   deceased stands in the latter's shoes, even though the wrongful
   death act is for the benefit of certain persons (MCLA
   600.2922[1]).

2. Death—Wrongful Death Action—Infants—Fetus—Statutes.

   An action brought under the wrongful death act for the death of
   a fetus alleges the rights of the fetus; it is not a suit for injuries
   to the mother, either physical or mental, accompanying or
   resulting from the loss of the fetus; the suit is brought on
   behalf of the deceased, and cause of action belongs to the
   deceased (MCLA 600.2922).

3. Death—Wrongful Death Action—Infants—Fetus—Nonviable
   —Statutes.

   A three-month-old nonviable infant *en ventre sa mere,* not born
   alive, is not a "person" within the provisions of the wrongful
   death act (MCLA 600.2922).

Dissent by R. M. Maher, J.

4. Death—Wrongful Death Action—Infants—Nonviable—Stat-
   utes.

   *A nonviable fetus should be considered a "person" under the
   wrongful death act (MCLA 600.2922).*

Appeal from Wayne, James N. Canham, J. Sub-
mitted June 3, 1975, at Detroit. (Docket No.
21827.) Decided October 28, 1975. Leave to appeal
denied, 396 Mich 836.

References for Points in Headnotes
[1] 22 Am Jur 2d, Death § 199.
[2–4] 22 Am Jur 2d, Death § 144 *et seq.*

Complaint by Kenneth Toth, as special administrator of the estate of Baby Liggens, deceased, against Willie Goree for damages for wrongful death arising out of an automobile accident. Summary judgment for defendant. Plaintiff appeals. Affirmed.

*Barbara, Wisok, Tavoularis, Ruby & Domol, P. C.,* for plaintiff.

*Eggenberger, Eggenberger, McKinney & Weber,* for defendant.

Before: DANHOF, P. J., and R. B. BURNS and R. M. MAHER, JJ.

DANHOF, P. J. This cause of action arises out of an automobile accident which occurred on November 1, 1970. As a result of this accident, Betty Liggens allegedly suffered a miscarriage. The fetus was not "viable". Prior to the trial of this action, defendant brought a motion for summary judgment pursuant to GCR 1963, 117 on the basis that this action was not maintainable as Baby Liggens was not medically viable. On September 24, 1974, the Honorable James N. Canham entered an order granting defendant's motion for summary judgment. Plaintiff appeals from this order. There was no written opinion.[1]

The decedent was a three-month-old infant *en ventre sa mere*.[2]

The only issue presented in this case is whether a three-month-old infant *en ventre sa mere,* not

---

[1] The above facts were stipulated to by the parties and are adopted herein.

[2] Although the complaint indicates the fetus was four months old, the filed deposition of the treating doctor, Samuel E. Strong, M.D., as well as the parties' briefs, indicates the fetus was actually three months old.

born alive, is a "person" within the wrongful death act. MCLA 600.2922; MSA 27A.2922.

The word *person* has not previously been interpreted this broadly under this act in Michigan.

MCLA 600.2922(1); MSA 27A.2922(1) reads as follows:

"Whenever the death of a person or injuries resulting in death shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages, in respect thereof, then and in every such case, the person who, or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony. All actions for such death, or injuries resulting in death, shall be brought only under this section."

Even though the wrongful death act is for the benefit of certain persons, the cause of action is a derivative one whereby the personal representative of the deceased stands in the latter's shoes. *Maiuri v Sinacola Construction Co,* 382 Mich 391, 395–396; 170 NW2d 27 (1969). The suit is brought on behalf of the deceased. The cause of action belongs to the deceased. When an action is brought under the wrongful death act for the death of a fetus, the rights alleged are those of the fetus. It is not a suit for injuries to the mother, either physical or mental, accompanying or resulting from the loss of the fetus. Therefore, the case law discussed will relate to the right of the infant to recover for prenatal injuries.

*Womack v Buchhorn,* 384 Mich 718, 721–722; 187 NW2d 218 (1971), stated that 27 American

jurisdictions allowed recovery for prenatal injury. An examination of those jurisdictions indicated that in each case where recovery was allowed the fetus was either viable[3] or survived birth for at least a short time. *Libbee v Permanente Clinic,* 268 Or 258; 518 P2d 636, 638 (1974), provides an even more relevant survey of the various jurisdictions. *Libbee* stated that 19 jurisdictions expressly allowed recovery for the death of a viable unborn infant, while 12 jurisdictions expressly prohibit recovery. The cases reviewed in the Annotation, *Liability for Prenatal Injuries,* 40 ALR3d 1222, limit recovery for death or injury to either a viable fetus or a child injured before birth but born alive.[4]

None of the cases allowed recovery for the death of a three-month-old nonviable fetus that was not born alive. However, several jurisdictions did expressly prohibit recovery for the death of a nonviable fetus that was not born alive.[5]

---

[3] A fetus is "viable" when it is "potentially able to live outside the mother's womb, albeit with artificial aid. Viability is usually placed at about seven months (28 weeks) but may occur earlier, even at 24 weeks." *Roe v Wade,* 410 US 113, 160; 93 S Ct 705; 35 L Ed 2d 147 (1973).

[4] The only exception to the above limits in the various jurisdictions is found in a ruling by the Court of Appeals of Georgia in *Porter v Lassiter,* 91 Ga App 712; 87 SE2d 100 (1955). After looking to decisions of the Supreme Court of Georgia relating to prosecutions for foeticide, the *Porter* court concluded the mother could maintain a suit for the loss of a 4-1/2 month-old baby dead upon birth. The *Porter* court further ruled that the child need not be "viable" provided it was "quick" or capable of moving in its mother's womb. However, the suit was brought under a Georgia statute that appears to give parents a right of recovery for the loss of a child rather than giving the right to recover to the deceased infant.

[5] *ALASKA: Mace v Jung,* 210 F Supp 706 (D Alas, 1962), *ILLINOIS: Rapp v Hiemenz,* 107 Ill App 2d 382; 246 NE2d 77 (1969), *Chrisafogeorgis v Brandenberg,* 55 Ill 2d 368; 304 NE2d 88 (1973), *IOWA: McKillip v Zimmerman,* 191 NW2d 706 (Iowa, 1971), *MASSACHUSETTS: Leccese v McDonough,* 361 Mass 64; 279 NE2d 339 (1972), *NEW HAMPSHIRE: Poliquin v MacDonald,* 101 NH 104; 135 A2d 249 (1957), *SOUTH CAROLINA: West v McCoy,* 233 SC 369; 105 SE2d 88 (1958).

*O'Neill v Morse,* 385 Mich 130; 188 NW2d 785 (1971), has extended the law under Michigan's wrongful death statute to allow an action on behalf of an eight-month-old viable fetus *en ventre sa mere.*

The discussion by the *O'Neill* Court of prenatal life more aptly describes a viable fetus. The Court stated, *supra,* at 135:

"The instructive dissent of *Mr. Justice Boggs,* in *Allaire v St. Lukes Hospital,* 184 Ill 359 (56 NE 638), at 368, was written in 1900. His view has been largely adopted in this country.

"The majority in that case held:

" 'That a child before birth is, in fact, a part of the mother and is only severed from her at birth, cannot, we think, be successfully disputed.'

"Justice Boggs wrote:

" 'Medical science and skill and experience have demonstrated that at a period of gestation in advance of the period of parturition the foetus is capable of independent and separate life, and that though within the body of the mother it is not merely a part of her body, for her body may die in all of its parts and the child remain alive and capable of maintaining life when separated from the dead body of the mother.' "

The nonviable fetus by definition is deemed not capable of living outside its mother's womb. The court further stated at 137:

"A fetus having died within its mother's womb is dead; it will not come alive when separated from her. A fetus living within the mother's womb is a living creature; it will not die when separated from her unless the manner, the time or the circumstances of separation constitute a fatal trauma."

While much of the language in *O'Neill* is ambigu-

ous as regards viability, it does tend to exclude the nonviable fetus from its discussion.

*O'Neill v Morse, supra,* at 133, also discussed the case of *Womack v Buchhorn, supra,* in connection with the first section of the wrongful death statute:

"In *Womack,* we overruled, *Newman v Detroit,* 281 Mich 60 [274 NW 710] (1937), and held that a common-law action does lie in this state for prenatal injuries.

"*Womack* being the applicable rule of common-law tort liability, we have only to apply the wrongful death statute to the facts of this case.

\* \* \*

"The obvious purpose of the statute, originally enacted as 1848 PA 38, is to provide an action for wrongful death whenever, *if death had not ensued,* there would have been an action for damages. *Womack* settled the question of whether, if death had not ensued, Baby Boy Pinet would have had an action for damages."

In *Womack* an action was brought on behalf of an eight-year-old surviving child for prenatal injuries suffered during the fourth month of pregnancy. However, *Womack* should not be read out of context to give significant legal existence to a nonviable fetus. As was stated in *People v Nixon,* 42 Mich App 332, 338, n 13; 201 NW2d 635 (1972):

"The *Womack* decision is sometimes mistakenly cited for the proposition that the Court recognized the unborn child's 'right to live'. This is not the case, for as the Court clearly stated: 'The only issue in this case is whether a common-law negligence action can be brought on behalf of a *surviving* child negligently injured during the fourth month of pregnancy.' (Emphasis supplied.) *Womack, supra,* 719–720. Thus the *Womack* decision would appear to be limited to those cases where there is a live birth. If there is a live birth, then

an action may be brought in the name of the child for prenatal injuries."

While *Womack* does give a cause of action for prenatal injury, that action is not without limits. Those limits are drawn. The infant must have been born alive as in *Womack* or have been viable as in *O'Neill* in order to have an action brought in the infant's own behalf, whether as a common-law action or as a wrongful death action.

The *Womack* Court itself failed to point out the key element of survival. The Court attributed the following to a Massachusetts case, *supra,* at 722, n 4:

"*MASSACHUSETTS* allows an action for wrongful death of a non-viable fetus (3-1/2 months), holding that a non-viable fetus is a 'person' within the meaning of the Massachusetts wrongful death act. *Torigian v Watertown News Co, Inc,* 352 Mass 446; 225 NE2d 926 (1967)."

However, a later Massachusetts case, *Leccese v McDonough,* 361 Mass 64; 279 NE2d 339, 341 (1972), stated in regard to a statute similar to the Michigan wrongful death statute:[6]

"The requirement that the foetus be born alive, stated expressly in the *Keyes* case, 340 Mass 633, 636; [165 NE2d 912 (1960)] lays down a sensible and easily

[6] The Massachusetts statute reads in relevant part: "Chapter 229, § 2, as amended, reads in part (emphasis supplied): 'A person who (1) by his negligence causes the death of a *person* in the exercise of due care, or (2) by wilful, wanton or reckless act causes the death of a person under such circumstances that the deceased could have recovered damages for personal injuries if his death had not resulted * * * shall be liable in damages in the sum of not less than five thousand nor more than fifty thousand dollars, to be assessed with reference to the degree of his culpability and distributed as provided in section one; except that * * * [exceptions not relevant]." 279 NE2d at 340, n 1.

administered rule under our statute. In recognizing the
possibility of recovery under c. 229 § 2 (as amended), for
a viable foetus born alive in the *Keyes* case, and for a
foetus nonviable at the date of injury but later born
alive (see the *Torigian* case, 352 Mass 446; 225 NE2d
926 [1967]), we went as far in revising the rule in the
*Dietrich* case, 138 Mass 14 [1884], as the statutory
language reasonably permits. If a foetus is born alive, it
becomes a 'person' with at least the theoretical possibil-
ity of survival and of enduring the consequences of
prenatal injury throughout its life. A foetus not born
alive seems to us to incur no such risk of continuing
injury and also not to be a 'person' within our interpre-
tation of the legislative intention. If there are to be
changes in the bases for recovery in this type of statu-
tory action, we think that they are for legislative rather
than judicial determination." (Footnote omitted.)

Once an infant survives birth and thus becomes a
"person," the infant would have had a cause of
action "if death had not resulted".

Moreover, the *O'Neill* and *Womack* cases must
be read in light of more recent developments in
the case law. *Roe v Wade,* 410 US 113; 93 S Ct
705; 35 L Ed 2d 147 (1973), has had a considerable
impact on the legal status of the fetus.[7] In discuss-
ing that legal status, the *Roe* Court stated, "the
unborn have never been recognized in the law as
persons in the whole sense". *Roe v Wade,* 410 US
113, 162. Yet, the ruling by the *Roe* Court that the
attending physician in consultation with the pa-
tient may terminate the pregnancy in the first
three months, free of interference by the state, is
the crucial point. See *Roe v Wade, supra,* at 163–
164. If the mother can intentionally terminate the
pregnancy at three months, without regard to the
rights of the fetus, it becomes increasingly difficult

[7] Admittedly, the public policy of this state on abortion has been
subordinated to the changed circumstances resulting from *Roe v
Wade. See People v Bricker,* 389 Mich 524, 529; 208 NW2d 172 (1973).

to justify holding a third person liable to the fetus for unknowingly and unintentionally, but negligently, causing the pregnancy to end at that same stage. There would be an inherent conflict in giving the mother the right to terminate the pregnancy yet holding that an action may be brought on behalf of the same fetus under the wrongful death act.[8]

Finally, the statute itself, MCLA 600.2922; MSA 27A.2922, should not become the object of judicial legislation. If Michigan is to become the first jurisdiction to allow recovery under the wrongful death act on behalf of an unborn three-month-old nonviable fetus, it is a determination for the Legislature.

"This is a problem for the legislatures of the various states. They must decide the problems in the light of the moral issues, the conflicting rights of the mother and child, the extent of medical knowledge and the interests of the state."[9]

In view of the aforementioned considerations, we hold a three-month-old infant *en ventre sa mere,* not born alive, is not a 'person' within the wrongful death act. MCLA 600.2922; MSA 27A.2922.

Affirmed. Costs to the defendant.

R. B. BURNS, J., concurred.

R. M. MAHER, J. *(dissenting).* Until recently, Michigan law imposed no liability for prenatal

---

[8] Consider the implications of allowing such conflicting rights along with the abolition of intra-family immunity in *Plumley v Klein,* 388 Mich 1; 199 NW2d 169 (1972). Consider further the precarious position that the physicians of this state would be put in and the subsequent effect on the physician-patient relationship.

[9] *McGarvey v Magee-Womens Hospital,* 340 F Supp 751, 754 (WD Pa, 1972).

injuries. *Newman v Detroit,* 281 Mich 60; 274 NW
710 (1937). Nor could there be an action under the
state's wrongful death act for the negligent termi-
nation of prenatal existence. *Powers v Troy,* 380
Mich 160; 156 NW2d 530 (1968). In 1971, the
Michigan Supreme Court overruled both *Newman*
and *Powers. Womack v Buchhorn,* 384 Mich 718;
187 NW2d 218 (1971), allowed the maintenance of
a common law negligence action on behalf of a
minor for prenatal brain injuries suffered during
the fourth month of pregnancy. *O'Neill v Morse,*
385 Mich 130; 188 NW2d 785 (1971), read "person"
in Michigan's wrongful death statute, MCLA
600.2922; MSA 27A.2922, to include an unborn
child.

The majority draws limits on these recent deci-
sions, limits which I am certain are unjustified. In
*Womack v Buchhorn, supra,* the Michigan Su-
preme Court joined the majority of American ju-
risdictions that allow a person to recover for pre-
natal injuries. The plaintiff in *Womack* was not
viable at the time of the injury, but, as far as the
opinion indicates, this presented no problem for
the Court.

*Womack* was a common law action for prenatal
injuries, brought by a child who survived his inju-
ries. Before us now is a statutory action for wrong-
ful death. But the actions are related. *O'Neill v
Morse, supra,* and the language of our wrongful
death statute shows the relationship. The first
section of the statute, MCLA 600.2922; MSA
27A.2922, reads:

"(1) Whenever the death of a person or injuries
resulting in death shall be caused by wrongful act,
neglect or default, and the act, neglect or default is
such as would, if *death had not ensued,* have *entitled
the party injured to maintain an action and recover*

*damages,* in *respect thereof, then and in every such case,* the person who, or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony. All actions for such death, or injuries resulting in death, shall be brought only under this section." (Emphasis added.)

The Supreme Court in *O'Neill* declared that the purpose of the statute was "to provide an action for wrongful death whenever, *if death had not ensued,* there would have been an action for damages", 385 Mich at 133. Since *Womack* had recognized the right of a child to sue for prenatal injuries, there was no basis to deny a right of action for the wrongful death of an unborn child who, if his death had not ensued, would have had an action for damages. If *Womack,* where the plaintiff was not viable at the time of his injury, led the Supreme Court in *O'Neill* to read "person" in the wrongful death statute to include the unborn, why has the majority here read the same word, in the same statute, as excluding the unborn prior to viability?

Mr. Justice Holmes, sitting then on the Massachusetts Supreme Judicial Court, authored the first American opinion on tort liability for prenatal injuries in *Dietrich v Inhabitants of Northampton,* 138 Mass 14 (1884). A woman, four to five months pregnant, fell upon a defective highway and suffered a miscarriage. The premature infant died within minutes of birth. The administrator of his estate brought an action, but the court would not allow it. Holmes questioned whether a duty could be owed "to one not yet in being", and stated that "as the unborn child was a part of the mother

at the time of the injury, any damage to it which was not too remote to be recovered for at all was recoverable by her". 138 Mass at 16–17.

Though *Dietrich* has been effectively overruled, see *Keyes v Construction Service, Inc,* 340 Mass 633; 165 NE2d 912 (1960), it continues to affect decisions. The viability "requirement" can be traced to an early attempt by an Illinois judge to avoid the unacceptable result found in *Dietrich.* In *Allaire v St. Luke's Hospital,* 184 Ill 359; 56 NE 638, 48 LRA 225 (1900), the Illinois Supreme Court, relying on *Dietrich,* refused to allow an action for prenatal injuries. Justice Boggs dissented. Holmes in *Dietrich* and the majority in *Allaire* thought that no duty could be owed an unborn child, who was only part of the mother until birth. Justice Boggs attacked this position with the concept of viability:

" 'Medical science and skill and experience have demonstrated that at a period of gestation in advance of the period of parturition the foetus is capable of independent and separate life, and that though within the body of the mother it is not merely a part of her body, for her body may die in all of its parts and the child remain alive and capable of maintaining life when separated from the dead body of the mother.' "

This provided a means by which to avoid the undeniably harsh results that occur when the legal existence of a fetus is denied.

However, the influence of Boggs' dissent was not felt for some time. In 1923, a Louisiana court used analogies drawn from that state's civil code to allow recovery for the wrongful death of a child who died, soon after birth, from prenatal injuries. *Cooper v Blanck,* 39 So 2d 352 (La App, 1923).

Though the decision was rendered in 1923, it

was not published until 1949; by then a few common law jurisdictions recognized an action for prenatal injuries. *Bonbrest v Kotz,* 65 F Supp 138 (D DC, 1946), *Williams v Marion Rapid Transit, Inc,* 152 Ohio St 114; 87 NE2d 334; 10 ALR2d 1051 (1949). Both *Bonbrest* and *Williams* were actions brought by children after their birth who were viable at the time of their injury, and this was emphasized in both cases and used as a means of distinguishing *Dietrich. Williams* quoted Justice Boggs' dissent in *Allaire* in support of its emphasis on viability. The Federal Court and the Ohio court both pointed out that, for the law of property, the separate existence of a child did not begin only at birth. Why, they questioned, should tort law view birth as crucial?

For a time, courts continued to emphasize viability when children brought actions for prenatal injuries. See, *e.g., Mallison v Pomeroy,* 205 Or 690; 291 P2d 225 (1955), *Damasiewicz v Gorsuch,* 197 Md 417; 79 A2d 550 (1951) (concurring opinion), *Tursi v New England Windsor Co,* 19 Conn Supp 242; 111 A2d 14 (1955), *Keyes v Construction Service, Inc,* 340 Mass 633; 165 NE2d 912 (1960). It was not long, however, before a majority of courts refused to consider viability at the time of injury to be of any importance in an action for prenatal injuries brought by a child born alive. Medical authorities did not support the proposition that viability signaled separate existence, and restricting recovery to only those viable at the time of their injury would lead to unjustifiably harsh results. See, *e.g., Bennett v Hymers,* 101 NH 483; 147 A2d 108 (1958), *Smith v Brennan,* 31 NJ 353; 157 A2d 497 (1960), *Daley v Meier,* 33 Ill App 2d 218; 178 NE2d 691 (1961), *Sylvia v Gobeille,* 101 RI 76; 220 A2d 222 (1966). Commentators seem pleased with the rejection of viability as a crucial

factor in actions to recover for prenatal injuries, and critical of those jurisdictions where viability is still emphasized. See Prosser, Law of Torts (4th ed), § 55, p 337, Gordon, *The Unborn Plaintiff,* 63 Mich L Rev 579 (1965), Note, *The Impact of Medical Knowledge on the Law Relating to Prenatal Injuries,* 110 U of Pa L Rev 554 (1962), Note, *Prenatal Injuries and Wrongful Death;* 18 Vand L Rev 847 (1965).

It is true that a few jurisdictions have held that an action for the wrongful death of a nonviable fetus cannot be maintained. Three of the jurisdictions mentioned in footnote 5 of the majority's opinion have expressly held that there is no action for the death of a nonviable fetus. ALASKA: *Mace v Jung,* 210 F Supp 706 (D Alas, 1962) (but citing no Alaska cases so holding); NEW HAMPSHIRE: *Poliquin v MacDonald,* 101 NH 104; 135 A2d 249 (1957); ILLINOIS: *Rapp v Hiemenz,* 107 Ill App 2d 382; 246 NE2d 77 (1969).

The same footnote refers to the Iowa case of *McKillip v Zimmerman,* 191 NW2d 706 (Iowa, 1971), which involved a nonviable fetus. The court, ruling that a wrongful death action could not be maintained, refused to base its decision on viability. The court stated:

"We are not persuaded the case at bar should be decided on the viability theory. It has been severely criticized as unsound by legal commentators." 191 NW2d at 708.

Birth, the court thought, was a prerequisite for maintaining a wrongful death action.

Birth is the line discoverable from the cases on wrongful death. Where the action has been denied, the majority of courts have been unwilling to find

that someone not yet born could be covered by a wrongful death statute. Compare *Torigian v Watertown News Co, Inc,* 352 Mass 446; 225 NE2d 926 (1967) (nonviable at time of injury, survived 2-1/2 hours after premature birth) with *Leccese v McDonough,* 361 Mass 64; 279 NE2d 339 (1972) (viable at time of injury, stillborn). See, *Lawrence v Craven Tire Co,* 210 Va 138; 169 SE2d 440 (1969), *Stokes v Liberty Mutual Ins Co,* 213 So 2d 695 (Fla, 1968), *Kilmer v Hicks,* 22 Ariz App 552; 529 P2d 706 (1975), *Bayer v Suttle,* 23 Cal App 3d 361; 100 Cal Reptr 212 (1972), *Endresz v Friedberg,* 24 NY2d 478; 301 NYS2d 65; 248 NE2d 901 (1969). Other cases can be found at 15 ALR3d 992, 999. Numerous other jurisdictions, including Michigan, have allowed actions for the wrongful death of a fetus. Though a Georgia court has allowed recovery for the death of a nonviable fetus, *Porter v Lassiter,* 91 Ga App 712; 87 SE2d 100 (1955), most courts allowing recovery have noted that the case before them involved the death of a viable fetus. See cases at 15 ALR3d 992, 995. But the scarcity of cases holding that viability is essential, and the large number of courts that have refused to allow a wrongful death action even when the fetus was viable, lead to the conclusion that talk of viability in this context is an unfortunate remnant of the early attempts to avoid *Dietrich.*

The Supreme Court of New Jersey fully appreciates the *historical* role emphasis on viability played. In *Smith v Brennan,* 31 NJ 353; 157 A2d 497, 504–505 (1960), the court stated:

"Although the viability distinction has no real justification, it is explainable historically. The Dietrich case announced a theory that an unborn child was part of its mother. The first dissent from this proposition, by Justice Boggs in the Allaire case pointed out that an

unborn child who could sustain life apart from its mother could not be considered part of her. The logical appeal of Justice Boggs' approach, coupled with the understandable conservatism of the earlier courts who broke with the Dietrich theory, resulted in a rule of recovery limited by the viability distinction. But the usefulness of that distinction has disappeared with the modern repudiation of the Dietrich theory. And since it has no cogent medical reason to support it, and no relevancy to the harm resulting from prenatal injury, we do not believe that it has any place in the determination of the question of liability for wrongful conduct."

"The primary dispute [in wrongful death actions], of course, centers on the relevancy of birth." Gordon, *The Unborn Plaintiff,* 63 Mich L Rev 579, 593 (1965). In the dispute, the Michigan Supreme Court has sided with those courts that have allowed wrongful death action even if there has been no birth. "The phenomenon of birth is an arbitrary point from which to measure life." *O'Neill v Morse, supra,* 385 Mich at 136.

The majority admits that "much of the language in *O'Neil'l* is ambiguous as regards viability". I thing that *O'Neill* shows that just as birth is deemed irrelevant, so should viability. I recognize that it was not a necessary implication of *Womack v Buchhorn, supra,* that fetuses be included in the wrongful death act. But since the Supreme Court in *O'Neill* has viewed *Womack* as expanding the definition of "person" in the wrongful death act to include the unborn, surely "person" must include the entity involved in *Womack,* a nonviable fetus.

In *O'Neill,* the Supreme Court took note of the public policy to protect the property right of the unborn. It was pointed out that there is statutory authority for the appointment of guardians ad litem for unborn persons. MCLA 600.2045; MSA 27A.2045. The analogy from the protection of the

unborn's rights in property law to a "protection" in tort law is not a neat one when there has been no birth. In property law, the rights of the unborn are inchoate; prior to birth property rights are imperfect and vanish if there is no birth. Nevertheless, *O'Neill* made the analogy, and I see no reason to limit it. Since inchoate property rights may arise at any time prior to birth, why limit to a certain prenatal period, as the majority does, this "analogous" tort right?

The narrow question this case presents is how broad is the word "person" in our state's wrongful death act. The constitutional question decided in *Roe v Wade*, 410 US 113; 93 S Ct 705; 35 L Ed 2d 147 (1973), is unconnected to the statutory question at hand. In *Roe*, the Supreme Court considered how "important interests in safeguarding death, in maintaining medical standards, and in protecting potential life" restricted the privacy rights of a pregnant woman. 410 US at 154; 93 S Ct at 727; 35 L Ed 2d at 177. The balancing of the state's interest in regulating abortion with the right of privacy led to the Court's decision that state interference in the abortion decision is sometimes impermissible. But the case at hand presents none of the interests found crucial in *Roe*. We are not concerned with the right of a mother to freely terminate her pregnancy at a certain stage. Rather we have the case of a wrongful and unwanted termination. Certainly a tortfeasor cannot invoke the mother's privacy rights to defend his wrongdoing. Nor is the issue of whether a fetus is a person within the meaning of the Fourteenth Amendment presented. If it were, *Roe* would settle the issue. But nothing in *Roe* precludes this Court from ruling that a fetus, viable or not, is a person within the meaning of our state's wrongful death act. Since the case before us presents an issue

extremely dissimilar to that decided in *Roe,* I fail to see why the majority turned to that case for support.

The Michigan Supreme Court has given *Roe* a more restrictive reading. In *Larkin v Wayne Prosecutor,* 389 Mich 533; 208 NW2d 176 (1973), one of the issues presented was whether *Roe* rendered MCLA 750.322; MSA 28.554, assaultive abortion, invalid. The challenged statute reads:

"The wilful killing of an unborn quick child by any injury to the mother of such child, which would be murder if it resulted in the death of such mother, shall be deemed manslaughter."

The Court pointed out that the statute "is related only peripherally to the issues decided in *Roe v Wade* and *Doe v Bolton* [410 US 179; 93 S Ct 739; 35 L Ed 2d 201 (1973)]." 389 Mich at 539. The statute was not found to be unconstitutional, even though *Roe* recognized that the constitutional right of privacy would sometimes prohibit a state from preventing a mother from aborting an unborn quick child. The challenged statute, as the Court read it, prohibited abortions caused by felonious assault upon the mother. *Larkin* perceived that *Roe* said nothing about pregnancies terminated by a felonious assault; there is no reason not to believe that *Roe* similarly had nothing to say about pregnancies terminated by tortious infliction of injury on the mother.

If "The phenomenon of birth is an arbitrary point from which to measure life", *O'Neill,* 385 Mich at 136, isn't the majority's emphasis on viability in defining "person" equally arbitrary?

My position, that a nonviable fetus should be considered a person under the wrongful death act,

is not "judicial legislation". The "judicial legislation" argument that influenced the Supreme Court in *Powers v Troy, supra,* was rejected in *O'Neill.* "Yet it is doubtful that the 19th century legislatures that first passed the death statutes in this country envisioned either nonviable or viable fetuses as being within their terms; if relief is to be granted for prenatal or neonatal death at all, it should extend to both types of cases." Note, 110 U Pa L Rev 554, 562–563. In light of *O'Neill,* the majority's fear of "judicial legislation" is imaginary.

I would remand for the plaintiff to put forth his proofs.