336 So.2d 636 (1976)
Kathryn MILLER et al., Appellants,
v.
HIGHLANDS INSURANCE COMPANY et al., Appellees.
No. 75-1446.
District Court of Appeal of Florida, Fourth District.
August 6, 1976.
*638 Gilbert A. Haddad and Peter A. Miller of Preddy, Haddad, Kutner, Hardy & Josephs, Miami, for appellants.
Samuel Tyler Hill of Hinckley & Shores, Fort Lauderdale, for appellees Allstate and Stern.
ALDERMAN, Judge.
This is an appeal from the trial court's order dismissing with prejudice, for failure to state a cause of action, the claim of Kathryn Miller, as personal representative of her deceased unborn child.
The material facts alleged in the complaint are as follows: Kathryn Miller was a passenger in an automobile which was involved in an accident. At the time of the accident she was seven or more months pregnant with the child of her husband. The unborn child was viable, capable of sustaining its own life outside the womb, and would have survived but for the accident. As a direct and proximate result of the defendant's negligence the unborn child was killed.
In determining whether the complaint states a cause of action, the trial court and this court on appeal must assume all the well-pleaded allegations of the complaint to be true. Hopke v. O'Byrne, 148 So.2d 755 (Fla. 1st DCA 1963).
The Probate Division of the Circuit Court of Broward County appointed Kathryn Miller to be personal representative of her deceased unborn child. In her representative capacity she claims compensation on behalf of herself and her husband pursuant to the "Florida Wrongful Death Act", Sections 768.16-768.27, Florida Statutes (1973).
An action for wrongful death is entirely a creature of statute, being unknown to common law. If Kathryn Miller and her husband have a cause of action for the wrongful death of their unborn, viable child it must be based on § 768.19, which provides:
"When the death of a person is caused by the wrongful act, negligence, default, or breach of contract or warranty of any person, including those occurring on navigable waters, and the event would have entitled the person injured to maintain an action and recover damages if death had not ensued, the person or watercaft that would have been liable in damages if death had not ensued shall be liable for damages as specified in this act notwithstanding the death of the person injured, although death was caused under circumstances constituting a felony."
The primary issue on this appeal, and the question which we must first decide, is whether an unborn, viable child, killed as a direct and proximate result of another's negligence, is a "person" within the intent of § 768.19. If so the parents have a cause of action and the trial judge should not have dismissed the complaint. If not, the trial judge was correct and should be affirmed.
The Florida Supreme Court has not ruled on this point. In Stokes v. Liberty Mutual Insurance Co., 213 So.2d 695 (Fla. 1968), the Supreme Court held a stillborn fetus not to be a minor child within the contemplation of the former "Wrongful Death of a Minor Act", Section 768.03, Florida Statutes (1965)[1], and denied recovery to the parents *639 of a stillborn fetus. The holding of Stokes does not control the present case. As pointed out by the Supreme Court:
"... the Stokes do not claim under Fla. Stat. § 768.01, F.S.A., our general `death by wrongful act' statute. Conceivably this would be possible if they could:
(1) establish a stillborn fetus as `any person' under the statute; and (2) have someone appointed administrator of this so-called `person' so as to be able to bring the action in order of priority fixed by Fla. Stat. § 768.02, F.S.A." (At 697.)
"We are not here called upon to determine whether the stillborn fetus is a `person' ... under the last two cited sections." (At 698.)
"In view of the peculiar language of § 768.03, allowing recovery for the wrongful death of a `minor child', we hold that a stillborn fetus is not within the statutory classification... . [O]ur judgment is concluded primarily by the particular language of the Florida Statute in the light of its historical background." (At 700.)
A condition of recovery under § 768.19 is that "... the event would have entitled the person injured to maintain an action and recover damages if death had not ensued ..." We first consider whether under Florida law the Miller child, if it had survived and had been born alive, would have been entitled to maintain an action and recover damages for its prenatal injuries. A similar question has recently been considered by the Second District Court of Appeal in the case of Day v. Nationwide Mutual Insurance Co., 328 So.2d 560 (Fla. DCA 1976). In a well reasoned opinion the Second District held that a child born alive, having suffered prenatal injuries at any time after conception, has a cause of action against the tortfeasor. Our determination in this case does not have to be as broad. For the purposes of this appeal we assume that the unborn child at the time of its prenatal injury was viable. However, we accept the rationale of Day v. Nationwide Mutual Insurance Co., supra, and hold that the Miller child, if it had survived and had been born alive would have been entitled to maintain an action and recover damages for its prenatal injuries.
We now reach the crucial question of whether an unborn but viable child is a "person" within the meaning of § 768.19. The Supreme Court in Stokes, supra, pointed out that the first American case allowing recovery for the wrongful death of a viable, stillborn fetus was Verkennes v. Corniea, 229 Minn. 365, 38 N.W.2d 838 (1949). Thereafter divergent views developed and the court in Stokes, supra, at page 699, was able to cite numerous cases from other jurisdictions, one group holding that a viable fetus is a person and the other holding that a viable fetus is not a person. The passage of time has not closed the gap.
Additional cases which allow a cause of action for the death of a viable, unborn child are: Simmons v. Howard University, 323 F. Supp. 529 (D.D.C. 1971); Chrisafogeorgis v. Brandenberg, 55 Ill.2d 368, 304 N.E.2d 88 (1973); Orange v. State Farm Mutual Automobile Insurance Co., 443 S.W.2d 650 (Ky. 1969); Rice v. Rizk, 453 S.W.2d 732 (Ky.App. 1970); O'Neill v. Morse, 385 Mich. 130, 188 N.W.2d 785 (1971); Libbee v. Permanente Clinic, 268 Or. 258, 518 P.2d 636 (1974); Baldwin v. Butcher, 155 W. Va. 431, 184 S.E.2d 428 (1971); Panagopoulous v. Martin, 295 F. Supp. 220 (S.D.W.Va. 1969); Britt v. Sears, 150 Ind. App. 487, 277 N.E.2d 20 (1971); Toth v. Goree, 65 Mich. App. 296, 237 N.W.2d 297 (1971).
*640 The view that a cause of action for the death of a viable, unborn child is not maintainable is supported by the following additional cases: Bayer v. Suttle, 23 Cal. App.3d 361, 100 Cal. Rptr. 212 (1972); McKillip v. Zimmerman, 191 N.W.2d 706 (Iowa 1971); Leccese v. McDonough, 361 Mass. 64, 279 N.E.2d 339 (1972); Henry v. Jones, 306 F. Supp. 726 (D.Mass. 1969); Endresz v. Friedberg, 24 N.Y.2d 478, 301 N.Y.S.2d 65, 248 N.E.2d 901 (1969); Lawrence v. Craven Tire Co., 210 Va. 138, 169 S.E.2d 440 (1969); Justus v. Atchison, 126 Cal. Rptr. 150 (Ct. App. 2d Dist. 1975).
The reasons advanced by the various courts allowing a cause of action for the wrongful death of a viable, unborn child can be summarized as follows: A viable fetus is a human being. A living human being, born or not, is a person, and so is within statutes using the term "person" in an appropriate context. A human life is destroyed when a viable fetus is killed, for when viable the child is capable of independent existence outside the womb, and it is irrational to allow liability for the death of a person to hinge on whether the fatal injuries occur just before or just after birth. It is unjust to permit recovery for prenatal injuries only if they are not so severe as to cause death; such a situation favors the wrongdoer who causes death over the one who merely causes injuries, and so enables the tortfeasor to foreclose his own liability. The trend is toward allowing recovery for prenatal injuries to viable children. (See 15 A.L.R.3d 992, 994.)
The arguments generally enlisted by the courts denying the right to maintain an action for the wrongful death of a viable unborn child are these: An unborn child is not a person, but rather is only a part of its mother and so has no juridical existence. At common law a child born dead could not maintain an action for prenatal injuries. When the child is killed by, rather than surviving, its injuries, there is no basis for recovery based on deformities, disabilities, increased parental responsibilities, and the like. When the unborn child is killed there is no way to compute hypothetical future benefits to beneficiaries, nor is there evidence from which to infer monetary loss to the survivors; damages would be punitive, contrary to the intent of the wrongful death statutes, and against public policy. (See 15 A.L.R.3d 992, 994.)
Basically the same arguments on both sides of the question have been made by the parties to this appeal. In determining which of the conflicting views to accept we must give appropriate weight to § 768.17, which provides:
"It is the public policy of the state to shift the losses resulting when wrongful death occurs from the survivors of the decedent to the wrongdoer. Sections 768.16-768.27 are remedial and shall be liberally construed."
Accordingly, in construing this statute we should not impute to the Legislature a narrow and restrictive intent. If the Legislature had intended to exclude a viable, unborn child from the meaning of the word "person" we believe that it would have expressly done so. Since it did not, we conclude that the Legislature used the word "person" in a broad and unrestrictive sense, intending to include a viable, unborn child. As stated by the Supreme Court in McKibben v. Mallory, 293 So.2d 48 (Fla. 1974):
"..., our view is that when the new wrongful death act adopted by the 1972 Legislature, effective July 1, 1972, became effective, it provided a new and improved method of obtaining damages for the tortious destruction of a human life." (At 55.)
We conclude that the better view is that which allows a cause of action for the wrongful death of a viable, unborn child. In our opinion a viable unborn child is a "person" within the meaning of § 768.19.
We have not overlooked the case of Davis v. Simpson, 313 So.2d 796 (Fla. 1st DCA 1975), wherein the First District Court of Appeal reached a contrary conclusion, holding that the term "person" within the meaning of § 768.19 does not include a full *641 term, viable, but stillborn fetus. We have considered the rationale of Davis v. Simpson, supra, and although we respect the opinion of the First District, have reached a contrary conclusion. Our Constitution recognizes that the District Courts of Appeal may from time to time have divergent opinions. A procedure exists by which conflicts may be resolved and the law brought into harmony. Article V, Section 3(b)(3), Florida Constitution.
Having determined that under § 768.19 there is a cause of action for the wrongful death of a viable, unborn child we are faced with the secondary question of damages. Like the cause of action itself, only those damages specifically allowed by the "Florida Wrongful Death Act" may be recovered. For the benefit of herself and her husband, Kathryn Miller in her complaint seeks damages for:
(a) Medical and funeral expenses.
(b) Loss of future support and services.
(c) Pain and suffering of the parents of the unborn child.
We must determine whether these types of damages are recoverable for the wrongful death of a viable, unborn child.
First we will consider the claim for medical and funeral expenses. Section 768.21(5) provides that damages may be awarded for:
"Medical or funeral expenses due to the decedent's injury or death may be recovered by a survivor who has paid them."
It is conceivable that the unborn Miller child prior to its death may have required medical treatment separate and apart from that required by its mother. It should be remembered that we are not here dealing with a question of proof. The complaint alleges that medical expenses were incurred. In our opinion this is a proper element of damage and the plaintiff should be allowed an opportunity to prove the allegation. The same is true of funeral expenses. It is foreseeable that the parents of a stillborn child would incur funeral expenses. We hold that these expenses are proper elements of damage for the wrongful death of a viable, unborn child. This is in keeping with the legislative intent of the "Florida Wrongful Death Act" to shift the losses resulting when wrongful death occurs from the survivors of the decedent to the wrongdoer. § 768.17.
A different situation exists as to plaintiffs' claim for future loss of services and support. Section 768.21(1) allows a survivor to recover the value of:
"... future loss of support and services from the date of death and reduced to present value. In evaluating loss of support and services, the survivor's relationship to the decedent, the amount of the decedent's probable net income available for distribution to the particular survivor, and the replacement value of the decedent's services to the survivor may be considered." § 768.21(1)
In our opinion future loss of services and support is not an allowable element of damage for the wrongful death of a viable, unborn child. It is fundamental that damages may not be assessed on the basis of sheer speculation. 22 Am.Jur.2d, Damages, § 25; 25 C.J.S. Damages § 26, p. 675 et seq.; 9A Fla.Jur., Damages §§ 15, 18. In the case of prenatal death there is no competent means of measuring the value of future services and support of the unborn child. It would be impossible to prove by competent evidence the pecuniary value of future services and support of an unborn child. None of the usual indicia such as mental and physical capabilities, personality traits, aptitudes and training of the wrongfully killed are present. Evidence as to the unborn's child's "probable net income available for distribution to the particular survivor, and the replacement value of decedent's services to the survivor" would be sheer speculation. There could be no competent evidence as to the child's capabilities and potentialities. Gay v. Thompson, 266 N.C. 394, 146 S.E.2d 425, 15 A.L.R.3d 983 (1966). Plaintiff's claim for future loss of support and services should be struck.
*642 In considering the claim for pain and suffering of the parents of the unborn child we must construe § 768.21(4), which provides:
"Each parent of a deceased minor child may also recover for mental pain and suffering from the date of injury."
The key wording in this section is "minor child." Section 768.18(2), Florida Statutes (1973), Definitions, states:
"`Minor children' means unmarried children under twenty-one years of age."[2]
The construction of the term "minor child" in Stokes v. Liberty Mutual Insurance Co., supra, pertained only to a statute which was in force at that time and does not bind us here. In its restrictive definition of "minor child" in Stokes, the Supreme Court repeatedly emphasized that it was speaking solely in terms of § 768.03. It was not saying that an unborn child could never be a minor child in any context; it was merely saying that in the "peculiar language" of that statute a stillborn fetus was not within that unique statutory classification. Under the current wrongful death statutes, which represent a new departure on the entire subject, the element of damage created by § 768.21(4) is merely a statement of one of the modes of recovery available once the right of action has been established under § 768.19. We do not believe that a restrictive judicial interpretation of the term "minor child" as once used in a defunct statute must forever restrict the meaning of this term when it is used in a new, improved statute. We therefore conclude that the intent of the Legislature in enacting § 768.21(4), which happens to include the term "minor child", cannot be determined simply by reference to former § 768.03 and to a judicial opinion interpreting that now repealed statute.
We believe the use of the term "minor child" within the context of the current Florida Wrongful Death Act was intended to restrict the recovery of parents, as far as mental suffering is concerned, to such suffering caused by the death of a younger child as opposed to an offspring who is an adult. The provisions of the Florida Wrongful Death Act show a methodical approach to reasonable limitation of a tortfeasor's liability. The right of recovery is made to depend upon the closeness of the survivor's relationship to the deceased. The use of the qualifying word "minor" in § 768.21(4) recognizes the increasing detachment of children from parents with advancing maturity and provides a cut-off point beyond which a wrongdoer's liability for the mental suffering of those related to his victim may not be stretched. It is unreasonable to assume that words used to create a cut-off point based on an increase of independence of the child from the parent are also meant to be used to prevent recovery at a time when the ties between mother and child are most dependent. Birth is without question a major event in the development of a human being, but it is certainly not the beginning of an individual's life nor the beginning of his parents' love and concern. The mental pain and suffering of the parents of a stillborn child may be just as terrible as that of parents whose child dies after birth. In view of the legislative mandate that this statute is remedial and shall be liberally construed we hold that the Legislature intended to include a viable, unborn child within the meaning of the term "minor child" in § 768.21(4).
In summary we hold that a viable, unborn child is a "person" within the meaning of § 768.19, and that a cause of action exists for the wrongful death of such a child. A survivor who has paid them may recover such medical expenses as are incurred for the benefit of the viable, unborn child separate and apart from the medical expenses incurred for the benefit of the mother, as well as for the funeral expenses *643 of the stillborn child. The parents may also recover for their mental pain and suffering. However the survivors may not recover for future loss of support and services of the stillborn child.
We believe this case contains questions of great public interest and upon proper application of the parties will so certify pursuant to Fla.App. Rule 4.5(c)(6).
Reversed and remanded with instruction that plaintiffs' complaint be reinstated with the exception that the prayer for loss of future support and services be stricken.
MAGER, C.J., and DURANT, N. JOSEPH, Jr., Associate Judge, concur.
NOTES
[1] § 768.03, Fla. Stat. (1965). Parties in actions for death of minor child; damages. 

(1) Whenever the death of any minor child shall be caused by the wrongful act, negligence, carelessness or default of any individual, or by the wrongful act, negligence, carelessness or default of any private association or persons, or by the wrongful act, negligence, carelessness or default of any officer, agent or employee of any private association of persons, acting in his capacity as such officer, agent or employee, or by the wrongful act, negligence, carelessness or default of any corporation, or by the wrongful act, negligence, carelessness or default of any officer or agent, or employee of any corporation acting in his capacity as such officer, agent or employee, the father of such minor child, or if the father be not living, the mother may maintain an action against such individual, private association of persons, or corporation, and may recover, not only for the loss of services of such minor child, but in addition thereto, such sum for the mental pain and suffering of the parent (or both parents) if they survive, as the jury may assess.
(2) The right of action as set forth in subsection (1) shall extend to and include actions ex contractu and ex delicto.
[2] The Florida Supreme Court has recently held, in Hanley v. Liberty Mutual Insurance Co., 334 So.2d 11 (Fla., 1976), that with the passage of § 743.07, Fla. Stat. (1975) the definition of "minor" as contained in §§ 768.16 to 768.27, Fla. Stat. has been amended to mean any unmarried child under the age of 18 years.