REECE v CONSOLIDATED PACKAGING COMPANY

Docket No. 68470. Submitted December 8, 1983, at Detroit.—Decided
    April 16, 1984. Leave to appeal applied for.

    Jesse C. Reece, an employee of Consolidated Packaging Company,
    left his job due to pain which was the result of injuries suffered
    on the job by Reece over the years. He was voluntarily paid
    workers' compensation benefits from September 22, 1976, until
    October, 1978, by Liberty Mutual Insurance Company, Consoli-
    dated's insurance carrier. Liberty ceased payment on October 3,
    1978, on the ground that Reece was able to return to work.
    Reece filed a petition for further workers' compensation bene-
    fits with the Bureau of Workers' Disability Compensation. The
    hearing referee found that Reece suffered from a work-related
    disability as a result of an injury which occurred on March 9,
    1974, at which time Consolidated's insurance carrier was Em-
    ployers Mutual Insurance Company, thus making Employers
    liable to pay the entire amount of compensation as the carrier
    on the date of injury. The referee awarded Reece benefits
    payable by Employers from September 28, 1977, one year prior
    to the filing of Reece's petition, until further order of the
    bureau. The referee also determined that Employers was enti-
    tled to credit for the payments made by Liberty from Septem-
    ber 28, 1977, to October 3, 1978, but that Employers was
    obligated to reimburse Liberty for the payments it made during
    that period. The Workers' Compensation Appeal Board affirmed
    the hearing referee's findings and award to Reece but modified
    the referee's decision with respect to reimbursement. A major-

REFERENCES FOR POINTS IN HEADNOTES
[1] 82 Am Jur 2d, Workmen's Compensation §§ 424, 679.
[2, 3] 82 Am Jur 2d, Workmen's Compensation § 630.
[3] 82 Am Jur 2d, Workmen's Compensation § 635.
[4] 73 Am Jur 2d, Statutes §§ 145, 146.
[5] 73 Am Jur 2d, Statutes § 213.
[6] 82 Am Jur 2d, Workmen's Compensation § 662 *et seq.*
    Validity and construction of liability policy provision requiring
    insured to reimburse insurer for payments made under policy. 29
    ALR3d 791.
[7] 81 Am Jur 2d, Workmen's Compensation § 27.

ity of the appeal board determined that Liberty was not entitled to reimbursement from Employers because more than one year had passed from the time Liberty paid Reece benefits until Liberty made its claim for reimbursement. Liberty appeals by leave granted. *Held:*

The appeal board's construction of the statute under which it denied reimbursement to Liberty was erroneous. Reimbursement of one insurance carrier by another is not precluded by that statute. The hearing referee reached the correct result. The decision of the appeal board with respect to Liberty's claim for reimbursement is reversed and Employers Mutual is ordered to reimburse Liberty for the amount of compensation paid by Liberty during the period September 28, 1977, to October 3, 1978.

Reversed.

1. WORKERS' COMPENSATION — INSURANCE CARRIERS — VOLUNTARY PAYMENT — ADMISSIONS.

   Voluntary payment by an insurer of workers' compensation benefits is not an admission of liability.

2. WORKERS' COMPENSATION — APPEAL.

   The Court of Appeals is free to overturn a decision of the Workers' Compensation Appeal Board where the board's decision is based on a misconception of the law.

3. COURTS — ADMINISTRATIVE LAW — STATUTES — JUDICIAL CONSTRUCTION.

   The construction of a statute by the administrative agency authorized by the Legislature to administer the statute is entitled to deference by a reviewing court, but its construction is not binding on the court.

4. STATUTES — JUDICIAL CONSTRUCTION — LEGISLATIVE INTENT.

   The primary purpose of statutory construction is to ascertain and give effect to the intention of the Legislature, and rules of construction serve as guides in determining the legislative intent.

5. STATUTES — JUDICIAL CONSTRUCTION.

   An ambiguous statutory provision is to be construed, not in isolation, but with reference to its statutory context.

6. WORKERS' COMPENSATION — OVERPAYMENT — RECOUPMENT.

   The section of the Worker's Disability Compensation Act governing recoupment of overpayment of benefits by an employer or insurance carrier applies only to reimbursement claims against

disabled employees or the families of deceased employees, not to claims of one insurance carrier against another (MCL 418.833[2]; MSA 17.237[833][2]).

7. Workers' Compensation — Legislative Purpose — Benefits.
    The Worker's Disability Compensation Act is to be construed in light of the purpose which it seeks to accomplish: the delivery of sustaining benefits to a disabled employee as soon as possible after an injury occurs.

*Robert L. O'Connell & Associates* (by *Dan S. Barrett*), for plaintiff.

*Nelson, Payne, Parsons & Bouwkamp* (by *Stephen C. Bouwkamp*), for defendants-appellees and cross-appellees Consolidated Packaging Company and Liberty Mutual Insurance Company.

*Conklin, Benham, McLeod, Ducey & Ottaway, P.C.* (by *Martin L. Critchell*), of counsel to *Patrick Dugan,* for defendants-appellees and cross-appellants Consolidated Packaging Company and Employers Mutual Insurance Company.

Before: T. M. Burns, P.J., and MacKenzie and R. Robinson,* JJ.

MacKenzie, J. Defendant Liberty Mutual Insurance Company appeals by leave granted from a decision of the Workers' Compensation Appeal Board denying Liberty reimbursement from defendant Employers Mutual Insurance Company for workers' compensation benefits Liberty had voluntarily paid to plaintiff, Jesse C. Reece, who is not a party to this appeal. Plaintiff's last day of work with defendant Consolidated Packaging Company, also not a party on appeal, was September 21, 1976, at which time Liberty was Consolidated's

* Former circuit judge, sitting on the Court of Appeals by assignment.

compensation insurance carrier. Liberty voluntarily paid plaintiff workers' compensation benefits from September 22, 1976, until October 3, 1978, when it ceased payment on the ground that plaintiff was able to return to work.

Plaintiff filed a petition for further workers' compensation benefits, which petition was received by the Bureau of Workers' Disability Compensation on September 28, 1978. The hearing referee found that plaintiff suffered from a work-related disability as a result of an injury which occurred on March 9, 1974, at which time Consolidated's insurance carrier was Employers Mutual thus making the latter liable to pay the entire compensation as the carrier on the date of injury. *Sosnowski v Dandy Hamburger,* 384 Mich 221, 226-227; 180 NW2d 761 (1970). The referee awarded plaintiff benefits payable by Employers Mutual from September 28, 1977 (*i.e.,* one year prior to the filing of plaintiff's petition, see MCL 418.833[1]; MSA 17.237[833][1]) until further order of the bureau. The referee further determined that Employers Mutual was entitled to credit for the payments made by Liberty from September 28, 1977, to October 3, 1978, but that Employers Mutual was obliged to reimburse Liberty for the payments made during this period.

The Workers' Compensation Appeal Board (WCAB) affirmed the hearing referee's finding that plaintiff's current disability was attributable to the March 9, 1974, injury and the award of benefits to plaintiff, but modified the referee's decision with respect to reimbursement. A two-member majority of the WCAB determined that Liberty was not entitled to reimbursement from Employers Mutual based on MCL 418.833(2); MSA 17.237(833)(2) because more than one year had passed from the

time Liberty paid plaintiff benefits until Liberty made its claim for reimbursement. The third member of the WCAB concurred in the result, but on the public policy basis that Liberty had cut off plaintiff's benefits, leaving plaintiff with the burden of filing a petition, and that Liberty should have itself requested a liability determination and continued paying plaintiff benefits in the meantime.

As a preliminary matter, we note that Employers Mutual by way of cross-appeal contends that the board and the hearing referee erred in finding that plaintiff's disability was due to a single injury occurring on March 9, 1974, and argues that the board should have found that there was no single date of injury and thus should have applied the "last day of work" rule, MCL 418.301(1); MSA 17.237(301)(1), under which plaintiff's date of injury would be his last day of employment, hence making Liberty liable to pay compensation as the insurer at that time. Generally, where leave to appeal is granted to the appellant in a civil case, the appellee has the right timely to file a cross-appeal. GCR 1963, 807.2. In this case, however, the same issue which Employers Mutual raises on cross-appeal was previously raised in an application for leave to appeal by Employers Mutual, which application this Court denied in an order dated May 16, 1983. Hence, under these circumstances, we decline to address Employers Mutual's claim on cross-appeal.

Turning to the issue raised by Liberty in its appeal by leave granted, Liberty's voluntary payment of compensation to plaintiff did not constitute an admission of liability precluding it from reimbursement from Employers Mutual. See *Gilbert v Reynolds Metals Co,* 59 Mich App 62, 68;

228 NW2d 542 (1975). However, the WCAB majority found that § 833(2) of the Worker's Disability Compensation Act applied to Liberty's reimbursement claim against Employers Mutual, and reimbursement was precluded under the one-year limitation of § 833(2). Whether § 833(2) applies to a reimbursement claim such as Liberty's presents a question not heretofore addressed by this Court. Section 833 of the Worker's Disability Compensation Act provides in full as follows:

"(1) If payment of compensation is made, other than medical expenses, and an application for further compensation is later filed with the bureau, no compensation shall be ordered for any period which is more than 1 year prior to the date of filing of such application.

"(2) When an employer or carrier takes action to recover overpayment of benefits, no recoupment of money shall be allowed for a period which is more than 1 year prior to the date of taking such action." MCL 418.833; MSA 17.237(833).

Although findings of fact by the board are subject to limited judicial review, where the board misconstrues the law, this Court is free to overturn its interpretation. *Carter v Lakey Foundry Corp,* 118 Mich App 325, 331-332; 324 NW2d 622 (1982). The construction of a statute by the administrative agency authorized by the Legislature to administer the statute is entitled to deference by a reviewing court, but its construction is not binding on the court. *Szabo v Ins Comm'r,* 99 Mich App 596, 598; 299 NW2d 364 (1980). In the present case, after giving due deference to the board's interpretation, we find that the board's construction of § 833(2) as applying to claims for reimbursement by one insurance carrier against another carrier was erroneous.

The primary purpose of statutory construction is to ascertain and give effect to the intention of the Legislature, and rules of construction serve as guides in determining the legislative intent. *Browder v International Fidelity Ins Co,* 413 Mich 603, 611; 321 NW2d 668 (1982); *Carter Metropolitan Christian Methodist Episcopal Church v Liquor Control Comm,* 107 Mich App 22, 28; 308 NW2d 677, *lv den* 411 Mich 1037 (1981). The one-year limitation of § 833(2) applies "[w]hen an employer or carrier takes action to recover overpayment of benefits", but this provision is ambiguous in that it does not state whether it applies to reimbursement claims against the disabled employee, another insurance carrier, or both. However, we find guidance in the rule of construction that an ambiguous statutory provision be construed, not in isolation, but with reference to its statutory context. *Guitar v Bieniek,* 402 Mich 152, 158; 262 NW2d 9 (1978); *Royal Auto Parts v Michigan,* 118 Mich App 284, 289; 324 NW2d 607 (1982). The one-year limitation of subsection (1) of § 833 clearly applies to the amount of compensation to be paid to the disabled employee; indeed, subsection (1) was applied to plaintiff's claim for further compensation in the case herein. Thus, given the focus of subsection (1) on the amount of compensation to be paid *to disabled employees,* it is likely that the Legislature intended the one-year limitation of subsection (2) to apply to claims to recover overpayment of benefits *from disabled employees,* and not from another insurance carrier. Indeed, reimbursement to one carrier from another carrier has been ordered in other cases with no mention of § 833(2). *Sosnowski, supra,* pp 227-228; *Stewart v Saginaw Osteopathic Hospital,* 100 Mich App 502, 510; 298 NW2d 911 (1980), *lv den* 410 Mich 916 (1981).

Moreover, we find that public policy dictates that § 833(2) be interpreted as applying only to reimbursement claims against disabled employees or the families of deceased employees,[1] and not to claims of one insurance carrier against another as in the present case. The Worker's Disability Compensation Act is to be construed in light of the purpose which it seeks to accomplish. *Hite v Evart Products Co,* 34 Mich App 247, 251; 191 NW2d 136, *lv den* 386 Mich 753 (1971). The primary goal of the act is "the delivery of sustaining benefits to a disabled employee as soon as possible after an injury occurs". *McAvoy v H B Sherman Co,* 401 Mich 419, 437; 258 NW2d 414 (1977). In the situation involved in the present case, where one carrier voluntarily paid compensation to a disabled employee and later it is determined that another carrier is in fact liable for the entire compensation, to hold that the one-year limitation of § 833(2) may preclude or reduce reimbursement of the former carrier from the latter carrier would discourage carriers from voluntarily paying compensation to the disabled employee soon after the injury occurs. Instead, carriers would be inclined, whenever there appeared some question as to which carrier is in fact liable, to refuse to pay compensation, forcing the disabled employee to file a claim for benefits and leaving the employee without compensation while the claim is pending.

Nor can we agree with the reasoning of the concurring WCAB member that only a carrier who continues to pay compensation, while itself re-

---

[1] Of course, where reimbursement of the 70% compensation paid to a disabled employee during the pendency of an appeal from an award is involved, MCL 418.862; MSA 17.237(862) provides that reimbursement be recovered from the Second Injury Fund, not the disabled employee. *McAvoy v H B Sherman Co,* 401 Mich 419; 258 NW2d 414 (1977).

questing a liability determination and awaiting resolution, should be entitled to reimbursement from another carrier ultimately determined to be liable. Such an approach would again discourage a carrier from voluntarily paying prompt compensation to a disabled employee for fear that if it later discovers that another carrier is in fact liable, it will be forced to continue paying compensation, thus increasing its cash outflow and leaving it to seek reimbursement of an even greater sum. The remedial purpose of the act is better served by encouraging carriers to voluntarily pay compensation to the disabled employee for at least some period of time rather than not at all.

Likewise, we are not persuaded by Employers Mutual's policy argument that § 833(2) should be applied to a reimbursement claim such as Liberty's in order to encourage the carrier who voluntarily commences payment to promptly seek reimbursement from another carrier. While this argument has some merit, we conclude that encouraging carriers to voluntarily pay prompt compensation to disabled employees, in furtherance of the primary goal of the act, is overriding. Also, there may exist circumstances making it difficult for the carrier who voluntarily commences payment to discover within a year's time that there is some question about the date of injury and that another carrier may in fact be liable. Moreover, Employers Mutual has suffered no harm as a result of Liberty's making its reimbursement claim more than one year after it last voluntarily paid plaintiff compensation benefits. Under the hearing referee's decision, which we find reached the correct result, Employers Mutual is required to reimburse Liberty for the compensation paid by Liberty, but will receive credit for that amount. Thus, Employers

Mutual will pay compensation in an amount no greater than it would have had Liberty not voluntarily paid any compensation benefits to plaintiff.

The decision of the WCAB with respect to Liberty's claim for reimbursement is reversed and, in accordance with the decision of the hearing referee, Employers Mutual is hereby ordered to reimburse Liberty for the amount of compensation paid by Liberty during the period September 28, 1977, to October 3, 1978. No costs, a question of public significance being involved.