RITTER v WAYNE COUNTY GENERAL HOSPITAL

Docket No. 97709. Submitted June 8, 1988, at Detroit. Decided November 14, 1988. Leave to appeal applied for.

On March 17, 1984, Melvin Ritter, an intravenous drug user who had no medical insurance, went to the emergency room of Northwest General Hospital complaining of fever and chills, diminished appetite, weakness, and diarrhea. Wayne County General Hospital had, that same day, refused to accept Ritter because it had no beds available. Ritter was treated at Northwest for probable infective endocarditis. A decision was made to transfer Ritter to Detroit Osteopathic Hospital (DOH) for more rigorous treatment, but DOH refused to admit Ritter. Henry Ford Hospital also refused to admit Ritter, who then underwent further treatment at Northwest. On March 28, 1984, Henry Ford Hospital did accept Ritter as a transfer through the emergency room. Ritter underwent open heart surgery at Henry Ford, from which he never regained consciousness. Ritter died on April 6, 1984. Johnnie Mae Ritter, personal representative of the estate of Melvin Ritter, filed suit against all four of the hospitals in Wayne Circuit Court seeking damages for alleged wrongful refusal to admit Ritter as a patient. Plaintiff also claimed that defendants, by violating certain duties imposed by federal and state statutes and regulations, intentionally and deliberately disregarded the medical needs of Melvin Ritter in violation of 42 USC 1983 and Michigan law. The court, William Leo Cahalan, J., granted defendants' respective motions for summary disposition, finding that there was no duty on the part of defendants to provide services to Ritter. Plaintiff appealed, challenging the court's grant of summary disposition to Wayne County General and Detroit Osteopathic Hospital.

The Court of Appeals held:

1. Wayne County General Hospital had no duty to admit Ritter when it had no bed available for him.

2. Nothing in plaintiff's complaint or supporting documents

REFERENCES

Am Jur 2d, Hospitals and Asylums § 12; Negligence §§ 25, 82 et seq.
See the Index to Annotations under Hospitals.

indicate that at the time of the requested transfer to DOH emergency services were required or that DOH was apprised of the need for emergency services. There was no genuine issue as to whether DOH refused emergency services to Ritter.

3. The federal regulations and Michigan statutes cited by plaintiff do not give rise to a duty to treat Ritter.

4. Where defendants had no obligation to admit Ritter as a patient for treatment, their refusal to do so cannot constitute deprivation of rights secured by the United States Constitution and federal law. Summary disposition was properly granted to defendants.

Affirmed.

1. NEGLIGENCE — DUTY — QUESTIONS OF LAW.

There can be no actionable negligence where there is no legal duty, and the question of whether a duty exists is one of law to be decided by the court.

2. HOSPITALS — FEDERAL FUNDS — UNCOMPENSATED SERVICES — EMERGENCY SERVICES.

Hospitals which accept federal funds under the Hill-Burton Act are required in exchange to guarantee that the facility will be available to all persons residing in the area and that a reasonable volume of uncompensated services will be provided to persons unable to pay for them; once a reasonable volume of uncompensated services is provided to local residents, the hospital may deny uncompensated care to future patients, except in the case of emergency services; emergency services are those used in responding to the perceived individual need for immediate medical care in order to prevent loss of life or aggravation of physiological and psychological illness or injury (42 USC 291 et seq.).

3. HOSPITALS — UNCOMPENSATED SERVICES — UNAVAILABILITY OF NECESSARY SERVICES.

A medical facility is not in violation of its community service assurance under the Hill-Burton Act where it refuses services on account of the unavailability of the needed service in the facility (42 USC 291 et seq.; 42 CFR 124.603[a][1]).

4. CONSTITUTIONAL LAW — PRIVATE PARTIES — STATE ACTION.

The actions of a private entity do not become state action merely because the government provides substantial funding to the private entity or because the entity is subject to extensive state regulation; in order to invoke the state action doctrine, a complaining party must demonstrate a sufficient nexus between

the challenged action and the regulatory scheme alleged to be the impetus behind the private action.

*Thurswell, Chayet & Weiner* (by *Cyril V. Weiner* and *Sheryl R. Lederman*), for plaintiff.

*Samuel A. Turner*, Corporation Counsel, and *Mary M. Nassar* and *Alan B. Havis*, Assistant Corporation Counsel, for Wayne County General Hospital.

*Feikens, Foster, Vander Male & Denardis, P.C.* (by *Jack E. Vander Male* and *Joseph E. Kozely*), for Detroit Osteopathic Hospital Corporation.

*Michigan Legal Services* (by *Kathleen A. Gmeiner*), and *National Health Law Program* (by *Sylvia Ivey* and *Michael Dowell*), for County of Wayne Welfare Rights Organization and Westside Mothers.

Before: MICHAEL J. KELLY, P.J., and GRIBBS and C. W. SIMON, JR.,[*] JJ.

PER CURIAM. Plaintiff appeals as of right from separate orders entered granting summary disposition to defendants Wayne County General Hospital (WCG) and Detroit Osteopathic Hospital Corporation (DOH) and dismissing defendants as party defendants.

On March 17, 1984, plaintiff's decedent, Melvin Ritter, presented himself to the emergency room of Northwest General Hospital. In her complaint, plaintiff alleges that on March 17, 1984, WCG had "refused to accept Melvin Ritter because of 'no beds' available." According to the discharge summary from Northwest General Hospital, Ritter

---

[*] Circuit judge, sitting on the Court of Appeals by assignment.

complained of fever and chills, diminished appetite, weakness, and diarrhea. Ritter was an intravenous drug user and underwent aortic valve replacement surgery in 1982. A series of tests were performed on Ritter and he was treated for probable infective endocarditis. A decision was made to transfer Ritter to defendant DOH "for more vigorous treatment." Ritter, who had no medical insurance at the time, was refused admittance by DOH and Henry Ford Hospital. Ritter underwent further treatment at Northwest General.

On March 28, a physician at Henry Ford Hospital again refused to accept Ritter, but stated he would accept him as a transfer through the emergency room at Henry Ford. Ritter was transferred that day, underwent open heart surgery, never regained consciousness, and died on April 6, 1984.

Plaintiff sought damages for defendants' alleged wrongful refusal to admit Ritter as a patient. In Count II of her complaint, plaintiff claimed that defendants, by violating certain duties imposed by federal and state statutes and regulations, "intentionally and deliberately disregarded the medical needs of Melvin Ritter knowing the urgency and seriousness of his condition in violation of 42 USC 1983 and Michigan law." In granting defendants' respective motions for summary disposition, the trial court found there was no duty on the part of defendants to provide services to Ritter. On appeal plaintiff argues that the trial court erred in determining that, as a matter of law, defendants had no duty to admit Ritter.

Where there is no legal duty, there can be no actionable negligence. *Clark v Grover,* 132 Mich App 476, 480; 347 NW2d 748 (1984). The question of whether a duty exists is one of law to be decided by the court. *Smith v Allendale Mutual Ins Co,* 410 Mich 685, 713; 303 NW2d 702 (1981), reh den

411 Mich 1154 (1981). The Supreme Court explained:

> It is for the court to determine, as a matter of law, what characteristics must be present for a relationship to give rise to a duty the breach of which may result in tort liability. It is for the jury to determine whether the facts in evidence establish the elements of that relationship. Thus, the jury decides the question of duty only in the sense that it determines whether the proofs establish the elements of a relationship which the court has already concluded give rise to a duty as a matter of law.
>
> It is also for the court to determine what evidence is minimally necessary to establish the elements of a relationship on which tort liability may be premised. [*Id.,* pp 714-715.]

On appeal, plaintiff set forth several sources for defendants' duty to have provided medical services to Ritter. Certain of the sources are asserted as issues for the first time on appeal and therefore appellate review of those issues is precluded. *Schanz v New Hampshire Ins Co,* 165 Mich App 395, 408; 418 NW2d 478 (1988). Other claims, while mentioned at the hearing on defendants' motion for summary disposition, were not properly preserved for appeal since they were not raised in plaintiff's complaint and plaintiff at no time sought leave to amend her complaint to add these claims. *Jenkinson v DNR,* 159 Mich App 376, 380; 406 NW2d 302 (1987), lv den 429 Mich 877 (1987).

Plaintiff first contends that the trial court erred in failing to find that the Hill-Burton Act, 42 USC 291 *et seq.,* obliged defendants to admit Ritter.

> The Hill-Burton Act was enacted in 1946. The stated purpose of the Act was to assist the several states to survey the need for construction of hospi-

tals and develop programs for the construction of public and nonprofit hospitals as will, with existing facilities, "afford the necessary physical facilities for furnishing adequate hospital, clinic, and similar services to all their people" and "to construct public and other nonprofit hospitals in accordance with such programs." Hospital Survey and Construction Act of 1946, Pub L No 725, § 601, 60 Stat 1040, 1041. [*Newsom v Vanderbilt Univ,* 653 F2d 1100, 1104 (CA 6, 1981).]

Under the Hill-Burton Act, as amended, and federal regulations promulgated pursuant to the act, hospitals which accept federal funds under the act are required in exchange to guarantee that the facility will be available to all persons residing in the area and that a "reasonable volume of uncompensated services" will be provided to persons unable to pay for them. 42 USC 291c(e)(1). Once a reasonable volume of uncompensated services is provided to local residents, the hospital may deny uncompensated care to future patients, except in the case of emergency services. 42 CFR 124.603(a)(1) and (b)(1). The term "emergency services" is not defined by the subchapter which includes 42 CFR 124.603 and research discloses no case law construing the provision in this context. A related definition, however, is set forth in a different part of the federal regulations dealing with grants for training and emergency medical services. 42 CFR 57.2103 defines "emergency medical services" as "services used in responding to the perceived individual need for immediate medical care in order to prevent loss of life or aggravation of physiological or psychological illness or injury."

According to plaintiff's complaint, defendant WCG refused to accept Ritter on March 17, 1984, because there were no beds available. A facility is not in violation of its community service assurance

under the Hill-Burton Act where it refuses service on account of the unavailability of the needed service in the facility. 42 CFR 124.603(a)(1). Summary disposition in favor of defendant WCG was appropriate under MCR 2.116(C)(8). Accepting all well pled facts as true, plaintiff's claim is so clearly unenforceable as a matter of law that no factual development can possibly justify a right to recovery. *Sierocki v Hieber,* 168 Mich App 429, 433; 425 NW2d 477 (1988). As a matter of law, WCG had no duty to admit Ritter where no bed in the facility was available.

Nor do we believe that plaintiff has created a genuine issue of material fact as to the issue of defendant DOH's refusal to provide emergency services to Ritter. The cases cited by amicus curiae are inapposite because they all concern hospitals' refusals to render emergency services to individuals who first appeared in their alleged emergency condition at the defendant hospital. None of the cited cases involve the liability of an attempted transferee hospital.

In her complaint plaintiff alleges that the determination was made to transfer Ritter to another facility for "more vigorous care." According to Northwest General Hospital's discharge summary, only after Ritter underwent tests and treatment at Northwest was a decision made to request a transfer to DOH for more vigorous treatment. It is not apparent from the report that the services rendered at Northwest were emergency services. Nothing in plaintiff's complaint or supporting documents indicate that at the time of the requested transfer to DOH emergency services were required or that DOH was apprised of the need for emergency services.

Finally, we note that Ritter's death did not occur until sometime after he underwent open

heart surgery. These alleged facts do not create a genuine issue as to whether DOH refused emergency services to Ritter.

Plaintiff alternatively suggested a duty to treat Ritter should be imposed by Michigan common law. However, plaintiff cites no Michigan authority in support of her position nor does our research disclose any such supporting authority. See OAG, 1975-1976, No. 4797, p 36 (February 26, 1975). We are not inclined to find creation of such a duty warranted under the instant circumstances.

The remaining federal regulations and Michigan statutes cited by plaintiff do not give rise to a duty to treat Ritter. The federal regulations concern standards for hospital certification for medicaid reimbursement while the Michigan statutes generally provide the scope of rule-making authority at the Department of Public Health. The cited provisions are inapplicable to this case.

In the second count of her complaint, plaintiff asserted a right to relief under 42 USC 1983.

> To establish a right to relief under § 1983, a plaintiff must plead and prove two elements: (1) that he has been deprived of a right secured by the Constitution and laws of the United States; and (2) that defendant deprived him of this right while acting under color of law. *Parratt v Taylor,* 451 US 527; 101 S Ct 1908; 68 L Ed 420 (1981); *Paul v Davis,* 424 US 693; 96 S Ct 1155; 47 L Ed 2d 405 (1976). [*Moore v Detroit,* 128 Mich App 491, 499; 340 NW2d 640 (1983), lv den 422 Mich 891 (1985).]

The actions of a private entity do not become state action merely because the government provides substantial funding to the private party or because the entity is subject to extensive state regulation. *Newsom, supra,* pp 1113-1116. In order

to invoke the state action doctrine, a complaining party must demonstrate a sufficient nexus between the challenged action and the regulatory scheme alleged to be the impetus behind the private action. *Crowder v Conlan,* 740 F2d 447, 451 (CA 6, 1984). We seriously question whether plaintiff could satisfy the state action requirement of a § 1983 cause of action. *Newsom, supra; Crowder, supra.* However, we find it unnecessary to consider this issue because plaintiff's claim fails to satisfy even the first element of a cause of action under § 1983. Where defendants had no obligation to admit Ritter as a patient for treatment, defendants' refusal to do so cannot constitute a deprivation of rights secured by the United States Constitution and federal law.

Accordingly, because we agree with the trial court that the defendants had no duty to admit Ritter, we hold that summary disposition was properly granted to defendants.

Affirmed.