## JARVIS v PROVIDENCE HOSPITAL

Docket No. 102619. Submitted March 14, 1989, at Detroit. Decided July 20, 1989.

Gerald Jarvis, as personal representative of the estate of Emily Ann Jarvis, brought a wrongful death action in Wayne Circuit Court against Providence Hospital, alleging that the failure of defendant to properly treat his wife, the mother of the deceased, following his wife's exposure to hepatitis in the course of her employment with defendant resulted in her contracting hepatitis which, in turn, caused the deceased's death in utero at more than eight months gestation. At the jury trial before Richard P. Hathaway, J., the proofs showed that, while between three and four months gestation, Mrs. Jarvis, in her capacity as a laboratory technician, cut her finger on a vial of a substance that was known to have a two percent chance of containing hepatitis virus. She immediately cleaned her finger and two days later informed her supervisor. Mrs. Jarvis testified that her supervisor indicated there was no reason for concern and neither had her injected with gamma globulin nor suggested that she receive such injection so as to prevent hepatitis. The jury returned a verdict in favor of plaintiff in the amount of $400,000. Defendant appealed.

The Court of Appeals *held:*

1. Since the plaintiff's deceased was viable at the time of her death in utero, a wrongful death action may be maintained even though the negligent act giving rise to the claim occurred at the time the plaintiff's deceased was not yet viable.

2. Defendant owed a duty of care to the plaintiff's deceased independent of any duty of care owed to the mother, since defendant had knowledge of the pregnancy and the injury to the deceased was foreseeable.

3. Plaintiff's wrongful death claim is not barred by the fact

REFERENCES

Am Jur 2d, Death §§ 168, 235; Negligence §§ 424 *et seq.*; Prenatal Injuries §§ 14, 15, 19, 20; Trial § 589; Workmen's Compensation §§ 290-292.

Workers' compensation act as precluding tort action for injury to or death of employee's unborn child. 55 ALR4th 792.

that any direct claim by the mother was barred by the exclusive remedy provision of the Workers' Disability Compensation Act.

4. The trial court did not err in refusing to instruct the jury on comparative negligence, since the negligence of the mother, if any, was not a proximate cause of the decedent's death.

5. The trial court did not abuse its discretion by admitting into evidence the fact that defendant had not contested Mrs. Jarvis' workers' compensation claim arising out of her contracting hepatitis.

Affirmed.

1. NEGLIGENCE — WRONGFUL DEATH ACT — UNBORN CHILDREN — VIABILITY.

A wrongful death action may be maintained on behalf of a stillborn fetus where, at the time of the death of the fetus, the fetus was viable even if the act giving rise to the wrongful death claim occurred at a stage of fetal development when the fetus was not yet viable.

2. NEGLIGENCE — DUTY OF CARE — FORESEEABILITY.

There exists a duty of care to avoid conduct which would create an unreasonable risk of harm to a fetus where one knows that a woman is pregnant and it is foreseeable that one's conduct might result in harm to the fetus; such a duty of care exists irrespective of whether the fetus is viable and exists independent from any duty one might have with respect to the mother.

3. NEGLIGENCE — WRONGFUL DEATH ACT — UNBORN CHILDREN — WORKERS' COMPENSATION — EXCLUSIVE REMEDY PROVISION.

A wrongful death action may be brought on behalf of a stillborn fetus against the employer of the mother of the fetus where the death of the fetus allegedly arose out of an act occurring in the course of the mother's employment; where an independent duty of care exists with respect to the fetus, the wrongful death action is not defeated by the exclusive remedy provision of the Workers' Disability Compensation Act.

4. TRIAL — JURY INSTRUCTIONS.

A properly requested jury instruction must be given if it accurately states the law and if it is applicable to the case; the determination of whether a jury instruction is applicable is within the discretion of the trial court.

5. NEGLIGENCE — PROXIMATE CAUSE — JURY QUESTIONS.

The issue of proximate cause is ordinarily a question for the jury; however, that issue may be decided by the court if the relevant

facts are not in dispute and reasonable minds could not differ as to the application of the concept of proximate cause to those facts.

6. NEGLIGENCE — WRONGFUL DEATH — EVIDENCE — WORKERS' COMPENSATION — VOLUNTARY PAYMENT.

It is not an abuse of discretion for a trial judge, in a wrongful death action brought on behalf of the estate of a stillborn viable fetus against the mother's employer in which death allegedly resulted from the mother contracting hepatitis as a result of a work-related exposure to the hepatitis, to permit the admission of evidence that the employer had not contested the mother's workers' compensation claim based upon having hepatitis where such evidence is used to rebut the argument that the mother contracted the hepatitis from some source other than her employment.

*Lopatin, Miller, Freedman, Bluestone, Erlich, Rosen & Bartnick* (by *Richard E. Shaw* and *Lee R. Franklin*), for plaintiff.

*Kitch, Saurbier, Drutchas, Wagner & Kenney, P.C.* (by *Kenneth W. Empey, John P. Ryan* and *Susan H. Zitterman*), for defendant.

Before: WAHLS, P.J., and REILLY and G. S. ALLEN,* JJ.

REILLY, J. Defendant appeals as of right from a jury verdict awarding damages to plaintiff under the wrongful death statute, MCL 600.2922; MSA 27A.2922. Plaintiff filed the underlying complaint as personal representative of the estate of his daughter, who died in utero after her mother contracted hepatitis while employed at defendant's laboratory. We affirm.

Ann Jarvis, plaintiff's wife and the mother of plaintiff's decedent, was employed as a medical technician in defendant's laboratory. On October

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

27, 1982, while at work, Mrs. Jarvis cut her finger on a vial containing a bilirubin control substance. At the time, Mrs. Jarvis was approximately 3½ months pregnant, with an expected delivery date of April 10, 1983. Although she immediately cleansed and bandaged the wound, Mrs. Jarvis did not file an accident report with her supervisor until two days later on October 29, 1982. It is undisputed that Mrs. Jarvis was not then given an injection of gamma globulin, a purified blood product effective in combating hepatitis.

On March 21, 1983, when she was eight months pregnant, Mrs. Jarvis was diagnosed as having contracted hepatitis. At that time, an examination by Mrs. Jarvis' doctor revealed that plaintiff's decedent had a strong and regular fetal heart rate. Mrs. Jarvis' doctor concluded that nothing unusual was occurring to the fetus. However, the fetus was subsequently delivered stillborn on March 27, 1983. Plaintiff's expert witness testified that the death resulted from the hepatitis contracted by Mrs. Jarvis.

Plaintiff's theory at trial was that the fetal death resulted from defendant's negligence in, among other things, assuring Mrs. Jarvis that there was no risk of hepatitis infection and failing to administer a gamma globulin injection to Mrs. Jarvis after she cut herself on October 27, 1982. Testimony disclosed that in order to forestall hepatitis, the injection must be given within three to seven days of exposure. Additionally, it was apparently defendant's practice to advise those employees who had possibly been exposed to hepatitis that they should contact defendant's employee health services office for further care, presumably including a gamma globulin injection.

However, defendant failed to follow this procedure after Mrs. Jarvis cut herself on October 27,

1982. When Mrs. Jarvis turned in her accident report on October 29, 1982, she informed her supervisor, Dr. H. Lee Wiedner, that she was three months pregnant and inquired if any special treatment for the cut was required. Rather than instructing Mrs. Jarvis to seek further care at the health services office, Dr. Wiedner advised her not to be concerned because the sample to which she had been exposed had negative results for hepatitis in tests performed by the manufacturer. Dr. Wiedner allegedly acquired this information from an insert included with the samples by the manufacturer, which disclosed only a two percent risk of hepatitis infection from the samples. However, the manufacturer also included a warning that the samples should be treated as capable of transmitting hepatitis. Further, there was expert testimony that a two percent risk is significant. Following the conclusion of proofs, the jury returned a verdict for plaintiff in the amount of $400,000.

I

The crucial issue presented in this case is whether a wrongful death action may be maintained on behalf of a fetus that was not viable at the time of the tortfeasor's negligent conduct but which was viable at the time of the resulting injury. We conclude that such an action is appropriate.

The concept of viability refers to a fetus' capacity to live outside the mother's womb, albeit with artificial aid. *Toth v Goree,* 65 Mich App 296, 299, n 3; 237 NW2d 297 (1975), lv den 396 Mich 836 (1976); *Roe v Wade,* 410 US 113, 160; 93 S Ct 705; 35 L Ed 2d 147 (1973). In *Roe, supra,* it was noted that, from a medical standpoint, viability is usually placed at about seven months (twenty-eight

weeks), but may occur earlier, even at six months (twenty-four weeks). *Id.* Under Michigan common law, a negligence action for prenatal injury may be maintained on behalf of a fetus if (1) the fetus is subsequently born alive, *Womack v Buchhorn,* 384 Mich 718, 725; 187 NW2d 218 (1971), or (2) the fetus was viable at the time of injury. *O'Neill v Morse,* 385 Mich 130; 188 NW2d 785 (1971). See also *McKinstry v Valley Obstetrics-Gynecology Clinic, PC,* 428 Mich 167, 192; 405 NW2d 88 (1987). In the instant case, plaintiff's decedent was not subsequently born alive. However, for purposes of this appeal, it is undisputed that plaintiff's decedent was viable when injured. Although only three and one-half months old at the time of defendant's negligence, the record discloses that plaintiff's decedent was not injured as a result of that negligence until eight months old. Thus, under Michigan common law, plaintiff's complaint states a cause of action. See *O'Neill, supra.*

Nonetheless, defendant asserts that plaintiff's claims are deficient because plaintiff's decedent was not viable at the time of defendant's negligent conduct. Defendant contends that viability must exist at the time of the alleged negligence; otherwise defendant is liable for conduct which occurred when no duty was owed to plaintiff's decedent since the fetus was not then a legal entity. Although we agree that viability remains a crucial consideration in determining whether a tortfeasor is liable for injury to an unborn fetus,[1] we conclude that defendant's argument is without merit under the fact situation presented here. Rather, we are persuaded that the maintenance of the instant complaint comports with the principles

[1] See conflicting opinions of this Court in *Fryover v Forbes,* 176 Mich App 36; 439 NW2d 284 (1989), and *Toth v Goree, supra.*

developed by our Supreme Court in response to prenatal injury claims.

In *Womack, supra,* the Supreme Court overturned the long-standing prohibition against recovery for prenatal injury to permit a common-law negligence action on behalf of an afterborn child for brain injuries suffered in an automobile accident when the child was a nonviable, four-month-old fetus. *Womack, supra* at 725. The Court concluded *id.,* citing *Smith v Brennan,* 31 NJ 353, 364-365; 157 A2d 497 (1960):

> [J]ustice requires that the principle be recognized that a child has a legal right to begin life with a sound mind and body. If the wrongful conduct of another interferes with that right, and it can be established by competent proof that there is a causal connection between the wrongful interference and the harm suffered by the child when born, damages for such harm should be recoverable by the child.

The impact of *Womack, supra,* is that the date of the injury is irrelevant provided the fetus survives birth, because the afterborn child has a right "to begin life with a sound mind and body." *Id.* In *O'Neill, supra,* this principle was extended to uphold a wrongful death claim on behalf of a viable fetus fatally injured during the eighth month of pregnancy. *O'Neill, supra* at 132. Although the language of *O'Neill* is criticized for its ambiguity, see *Toth, supra* at 300-301, the plain import of the decision is that birth is an arbitrary point from which to measure the sufficiency of a claim for prenatal injury. Rather, *O'Neill* implicitly recognizes that there should be a cause of action for injuries which result in the death of a viable eight-month-old fetus because, once viable, the "right to

be born" is at least equally as significant as the "right to begin life with a sound mind and body."

The *O'Neill* Court noted that the "obvious purpose" of the wrongful death statute "is to provide an action for wrongful death whenever, *if death had not ensued,* there would have been an action for damages." *O'Neill, supra* at 133 (emphasis in the original); see also *Toth, supra* at 301.[2] Pursuant to *Womack, supra,* an afterborn child has an action for damages arising from negligent acts occurring prior to the viable stage of fetal development. Since a stillborn viable fetus would have had an equally valid cause of action, but for its death in utero, *O'Neill* plainly mandates that a wrongful death action on behalf of a viable fetus is appropriate, regardless of the stage of fetal development in which the negligence occurred.

II

Defendant next contends that it owed no duty to plaintiff's decedent, regardless of the viability issue, because it has no established relationship with plaintiff's decedent. Defendant correctly notes that the issue of duty requires a determination as to whether the relationship between the injured party and the alleged tortfeasor will give rise to a

[2] The subsection of the wrongful death act interpreted in *O'Neill,* MCL 600.2922(1); MSA 27A.2922(1), read then as follows:

Whenever the death of a person or injuries resulting in death shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages, in respect thereof, then and in every such case, the person who, or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony. All actions for such death, or injuries resulting in death, shall be brought only under this section.

legal obligation. *Moning v Alfono,* 400 Mich 425, 436-437; 254 NW2d 759 (1977). Although the record discloses a sufficient relationship between defendant and Mrs. Jarvis, based on their status as employer and employee, defendant argues that there is no similar special relationship between defendant and plaintiff's decedent. In the absence of such a special relationship, defendant maintains that there can be no finding of a duty owed to plaintiff's decedent. We disagree. Defendant's argument presupposes an unacceptably restrictive definition of "relationship."

In negligence actions, the question of whether a duty exists is one of law for the court to decide. *Moning, supra; Ritter v Wayne Co General Hospital,* 174 Mich App 490, 493; 436 NW2d 673 (1988). The concept of duty "comprehends whether the defendant is under *any* obligation to the plaintiff to avoid negligent conduct; it does not include—where there is an obligation—the nature of the obligation." *Moning, supra* at 437 (emphasis in the original); see also *Horn v Arco Petroleum Co,* 170 Mich App 390, 392; 427 NW2d 582 (1988).

As to the existence of *any* obligation, we note that the common law recognizes a general relationship between persons "which imposes on every person engaged in the prosecution of any undertaking an obligation to use due care, or to so govern his actions as not to unnecessarily endanger the person or property of others." *Clark v Dalman,* 379 Mich 251, 261; 150 NW2d 755 (1967); *Hetterle v Chido,* 155 Mich App 582, 587; 400 NW2d 324 (1986). Thus, the lack of a "special relationship" between defendant and plaintiff's decedent does not preclude plaintiff's instant claim, which is based on ordinary negligence.

Moreover, the determination of whether a duty exists depends in part on foreseeability, that is,

"whether it is foreseeable that the actor's conduct may create a risk of harm to the victim, and whether the result of that conduct and intervening causes were foreseeable." *Moning, supra* at 439. In the instant case, it was foreseeable that Mrs. Jarvis might contract hepatitis if not administered a gamma globulin injection within three to seven days after her accident. Indeed, defendant had established a procedure intended to guard against this very risk. Since Mrs. Jarvis was then pregnant, a fact known to defendant, it was also foreseeable that, should Mrs. Jarvis contract hepatitis, the fetus might suffer injury as well.[3] Because the defendant was aware of the existence of the fetus, and of the danger to it, the defendant was under a general duty to avoid conduct which would create an unreasonable risk of harm to that fetus.

Even so, defendant argues that it cannot owe a duty to plaintiff's decedent which is separate from the duty owed to the mother/employee because plaintiff's decedent was a part of the mother at the time of the alleged negligent conduct. In support of this theory, defendant cites *Roe, supra,* which has recognized that the fetus is "a potential human being" which does not enjoy the protection afforded a "person" under the constitution. *Roe,* recognizing the mother's right of privacy but rejecting any rights of the fetus, permits the mother, with the advise and consent of her physician, to allow the termination of the life of her 3½ month

---

[3] Another panel of this Court has recently concluded that a doctor's negligent failure to immunize a mother for rubella, resulting in prenatal injury to a child not yet conceived, is actionable, in part, because the future existence of that child was foreseeable. *Monusko v Postle,* 175 Mich App 269; 437 NW2d 367(1989). In *Monusko, supra,* there was also no "special relationship" between the parties because plaintiff was not yet even conceived. However, the *Monusko* Court ruled that the foreseeability of that plaintiff's conception, as well as the foreseeability of its being harmed as a result of defendant's negligence, rendered a finding of duty appropriate.

fetus. Therefore, defendant argues, the nonviable fetus should not be afforded independent status and given legal protection when someone other than the mother endangers its life. Defendant contends that, if the nonviable fetus is not a "person" entitled to protection from its mother who may choose to abort it, it should not be treated as a separate "person" entitled to protection under the wrongful death act. It is defendant's position that any cause of action which may exist here must be based on the rights of the mother, not on any rights of the fetus. As the mother's exclusive remedy against the employer is under the Workers' Disability Compensation Act, MCL 418.131; MSA 17.237(131), defendant asserts that it should not be required to respond to a claim arising from alleged misconduct toward a fetus which, at the time, was part of the mother. In view of *Womack* and *O'Neill,* we find this argument compelling, but not persuasive.

Examining the issue from the perspective of the rights of the fetus, we are well aware of the anomaly in the law which, under *Roe,* allows the mother to terminate the life of her fetus within the first two trimesters, but under *Womack* and *O'Neill,* requires persons to exercise due care for the nonviable fetus' well being. However, as *Roe* was balancing only the rights of the mother against the right of the state to protect a "potential human being," *Roe* did not determine whether a state might protect the "potential human being" from conduct of a third party which foreseeably endangers the life of a fetus, whether or not the fetus is viable. We conclude that such protection has been afforded in Michigan under the common law as interpreted by *Womack* and under the wrongful death act as interpreted by *O'Neill,* and that such protection is not inconsistent with the

mother's right of privacy preserved by *Roe.* Therefore, defendant was required to exercise due care with respect to plaintiff's decedent while it was a developing fetus regardless of the employer/employee relationship between the mother and the defendant.

We are cognizant of the burden this ruling may place on employers of pregnant women. However, any limitation on the rights of fetuses in the workplace afforded by *Womack, O'Neill*[4] and this decision is a matter for legislative, not judicial consideration. Any decision to extend the exclusive remedy provision of the Workers' Disability Compensation Act to limit the protection given to fetuses must be made by the Legislature.

### III

Defendant next contends that the trial court erred in not instructing the jury on comparative negligence. Defendant asserts that such an instruction was proper because the evidence indicates that the injury to plaintiff's decedent was caused,

[4] We note that the wrongful death act was amended after *O'Neill* was decided but the Legislature did not alter the language to avoid the impact of *O'Neill*, leaving us to conclude that the Legislature accepted the *O'Neill* Court's interpretation of the wrongful death act.

"It has long been recognized that where this Court has given an interpretation to a statute with no reaction from the legislature in the form of statutory revision, it may be assumed there is legislative acquiescence in the statute's meaning. *Even more persuasive is the rule that where the basic provisions of a statute have been construed by the courts and these provisions are subsequently reenacted by the legislature, it may be assumed that the legislature acted with the knowledge of the Court's decisions and that the legislature intended the reenacted statute to carry the Court's interpretation with it. Mc-Evoy v Sault Ste Marie,* 136 Mich 172 [98 NW 1006 (1904)]; *Gwitt v Foss,* 230 Mich 8, 12 [203 NW 151 (1925)]; *In re Clayton Estate,* 343 Mich 101, 106-107 [72 NW2d 1 (1955)]; *Jeruzal v Wayne County Drain Comm'r,* 350 Mich 527, 534 [87 NW2d 122 (1957)]". (Emphasis by Court.) [*Smith v Detroit,* 388 Mich 637, 650-651; 202 NW2d 300 (1972).]

in part, by Mrs. Jarvis' own negligence in failing to secure treatment. Having reviewed the record, we conclude that the trial court properly declined to give the instruction.

A properly requested jury instruction must be given if it accurately states the law and if it is applicable to the case. *Petrove v Grand Trunk W R Co*, 174 Mich App 705, 710-711; 436 NW2d 733 (1989). The determination of whether a jury instruction is applicable is within the discretion of the trial court. *Petrove, supra* at 712. In the instant case, defendant asserted that a comparative negligence instruction was proper because Mrs. Jarvis (1) had failed to quickly file an accident report regarding her cut finger, (2) had failed to go to defendant's employee health services office or follow up at the office for treatment of an earlier cut, and (3) had failed to consult with her personal doctor concerning the incident. However, the trial court ruled that these allegations were insufficient to support a comparative negligence instruction. The trial court concluded that, even if Mrs. Jarvis' conduct was negligent, that negligence was not a proximate cause of the injury to plaintiff's decedent because Mrs. Jarvis would have been refused the gamma globulin injection in any event. Having reviewed the record, we find that this finding was justified.

As to reporting the incident on the day it occurred, rather than two days later, there is nothing to indicate that Mrs. Jarvis would have received a different reaction from her supervisor. Further, the two-day lapse did not delay the effectiveness of the injection, since it is to be given only within three to seven days of the hepatitis exposure. As to Mrs. Jarvis' failure to go to defendant's employee health services office, the nurse in charge of that office testified that she would not

have given Mrs. Jarvis the injection without being directed to do so by Mrs. Jarvis' personal doctor. Similarly, Mrs. Jarvis' personal doctor testified that he would have declined to administer the injection without a determination by defendant as to whether the shot was necessary. Although defendant's infection control coordinator testified that she would have recommended the injection for Mrs. Jarvis, there is no evidence that such recommendation was either requested or required.

The trial court did not abuse its discretion in declining the comparative negligence instruction because there was no evidence establishing that Mrs. Jarvis' alleged negligence was a proximate cause of plaintiff's decedent's injury. Although the issue of proximate cause is ordinarily a question for the jury, the issue may be decided by the court if the relevant facts are not in dispute and reasonable minds could not differ as to the application of the concept of proximate cause to those facts. *Richards v Pierce,* 162 Mich App 308, 317; 412 NW2d 725 (1987); *McMillan v State Highway Comm,* 426 Mich 46, 63; 393 NW2d 332 (1986). We find this standard to be satisfied in the instant case.

We note that this is a wrongful death action brought by the personal representative of the estate to recover damages for the survivors as well as for the decedent. As the survivors are "real parties in interest," and the surviving mother is seeking damages through the personal representative, the argument is made by the defendant that, with respect to the mother's claim for damages, her negligence should be measured comparatively against the negligence of the defendant. Inasmuch as we have concluded that the trial court correctly determined that any negligence of the mother was

not a proximate cause of the decedent's injury, we decline to rule on this issue.[5]

## IV

Defendant also asserts that the trial court erred in allowing the admission of evidence indicating that defendant had not contested Mrs. Jarvis' workers' compensation claim arising from her contracting hepatitis. Defendant notes that such evidence is not admissible as proof of its liability. See *Reece v Consolidated Packaging Co,* 133 Mich App 684, 688; 350 NW2d 308 (1984), lv den 419 Mich 959 (1984). However, in the instant case, defendant had argued to the jury that it was possible that Mrs. Jarvis contracted the hepatitis from a source other than defendant's laboratory. Consequently, the defendant's voluntary payment of workers' compensation benefits to Mrs. Jarvis, regarding her hepatitis, was admissible as relevant rebuttal evidence. Since the trial court also included a cautionary instruction to the jury, we are not persuaded that the decision to admit the evidence was an abuse of discretion. *Kochoian v Allstate Ins Co,* 168 Mich App 1, 12; 423 NW2d 913 (1988).

Affirmed.

[5] We also decline to discuss the issue of whether the mother, as a survivor seeking damages, may be represented in a wrongful death action when she is also an employee of the defendant, and subject to the exclusive remedy provision of the Workers' Disability Compensation Act, as that issue has not been raised by the parties.